## SELLERS *et al. v.* COX *et al.*

1. The "act to incorporate the Hopeful school district in Mitchell county," etc., approved August 22, 1905 (Acts of 1905, p. 469), is unconstitutional because it is a special act and interferes with the general school law contained in the Political Code, §§ 1338-1408, and is violative of the constitution (Civil Code, § 5732), which provides that "laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law."

2. A party who has received the full benefit of a law subsequently found to be unconstitutional, and who was active in procuring its adoption, may be estopped, on the theory of implied contract, from contesting the levy and collection of a tax to pay for such benefit, according to the

terms of the law. But the estoppel will not be extended so as to conclude him as to acts not done strictly within the purview and by authority of the invalid law, nor from questioning the constitutionality of the law as to such matters as yet remain to be done in the future under the law, and as to expenses not yet incurred. The case of *Irvin* v. *Gregory*, 86 *Ga.* 605, considered and distinguished.

Argued November 19,—Decided December 12, 1906.

Rehearing denied January 18, 1907.

Petition for injunction. Before Judge Spence. Decatur superior court. October 6, 1906.

The plaintiffs in error filed an equitable petition in which they named as defendants J. M. Cox and others, as trustees of the Hopeful school district, and J. P. Heath and his associate members of the county board of education of Mitchell county, in their individual as well as in their official capacity. The petition recited the following state of facts: At the session of the General Assembly held in 1905, an act was passed entitled, "An act to incorporate the Hopeful school district, in Mitchell county," which act was approved by the Governor on August.22, 1905 (Acts of 1905, p. 469). By the terms of this act the General Assembly undertook to create a body corporate styled the "Trustees of the Hopeful School District," and to invest the trustees with full power and authority to operate a school or schools in a district of the County of Mitchell, the boundaries of the district being defined so as not to include any incorporated city or town. The act provided that it should be submitted for approval to the people of the district at an election to be held for that purpose. An election was duly held, the act was adopted by popular vote, and the defendants who are named as school trustees were elected as such and organized by electing from their number a president, vice-president, secretary and treasurer. Under the authority of this act of the General Assembly, these trustees have assumed full control of the public educational interests of the district and are claiming the right to establish and organize schools therein, and, to this end, are threatening and intend to levy and collect an ad valorem tax of one half of one per cent. on all property within the territorial limits of the district, to be used for the promotion of the educational interests therein. The trustees have likewise fixed a matriculation fee of one dollar to be paid by each pupil attending the schools in the district organized and put in

operation by them, and it is their purpose to open these schools on Monday, September 3, 1906. It is the purpose of the county board of education, acting in accordance with the provisions of the aforesaid act, to pay over to the treasurer of the board of trustees a part of the State school fund, as apportioned under the general school law, and to also pay over to the treasurer a pro rata share of the county school funds for pupils who reside outside of the Hopeful school district, but who by the permission of the county board of education attend school in said district. One of the plaintiffs is a citizen and taxpayer residing in the county of Mitchell outside of the territorial limits of the Hopeful school district, and having property subject to taxation in the county outside of that district; and the other petitioners are citizens, taxpayers, and property owners residing in said local school district and having property subject to taxation therein. The act incorporating the trustees of the Hopeful school district is, petitioners contend, unconstitutional, null and void, for the following reasons: (1) It is violative of art. 8, sec. 1, par. 1, of the State constitution, in that it destroys, to the extent therein provided, the uniformity of the public-school system of the State, required by that paragraph; (2) it is further violative of par. 1, sec. 4, of art. 1 of the constitution, which provides that "no special law shall be enacted in any case for which provision has been made by an existing general law," in that the local act is a special law in a case for which provision has already been made by the general law embodied in the Political Code, §§ 1338-1408; and (3) so much of section 7 of the act as undertakes to authorize the trustees to fix and collect an ad valorem tax not exceeding one half of one per cent. is invalid, in that it is a delegation by the General Assembly of the taxing power of the State, and operates as a restraint upon the right of the General Assembly to fix the amount of tax to be levied, and grants to the trustees, as a corporation, the discretionary right to determine whether an ad valorem tax shall be levied, when it shall be levied, and what amount shall be levied not exceeding a specified rate; so that said section of the act is violative of par. 1, sec. 1, art. 4 of the constitution. Petitioners further allege that this local school act is inoperative and invalid for the additional reason that the territorial limits of the Hopeful school district, as defined in the act, are so uncertain and indefinite that the boundaries and area of the school district are

incapable of ascertainment. The prayers of the petition were, that the defendant trustees be enjoined from levying the proposed tax and restrained from putting into operation any school within the district, as well as enjoined from collecting or receiving any matriculation fee; that they be further restrained from paying over to the secretary of the board any part of the school fund in their hands as compensation for his services, and the treasurer of that board be required to pay over to the county board of education any portion of the public-school fund which may be in his hands; and that the members of the board of education be restrained from paying over to the treasurer any part of the State school fund, as apportioned under the general school law.

The defendants filed an answer in which they admitted the steps taken under the act of 1905 to establish and maintain a local system of schools in the Hopeful school district; but they denied that they were acting without due authority or that the act was unconstitutional. They further answered that one of the petitioners, T. J. Sellers, acted as one of the managers at the election held under that act, and others of the petitioners voted at the election and otherwise participated therein; that promptly after the election the schools of the district were organized by the trustees, and have since been in operation, and all of the petitioners patronized the schools, sending their children to the same and receiving the full benefit thereof; that, pending the operation of the schools, it became necessary for the trustees to incur some indebtedness to maintain them, and, believing the operation of the schools was entirely satisfactory to the people of the district, and acting on the conduct of petitioners in participating in the election and the benefits of the schools, the trustees did incur the necessary indebtedness, buying on credit from one R. B. Wingate, in January, 1906, one mule with which to transport children from their homes to the schools, at a cost of $125, and buying feed for the mule to the amount of $65, all of which indebtedness was payable in the fall of 1906; that the trustees also borrowed from G. W. Baggs $50, giving a note therefor payable one day after date, with the understanding that it should be paid in the fall out of the taxes raised under said act, and also borrowed from J. J. Martin $65, upon a similar understanding, the money thus borrowed being used solely to defray the expenses of operating the schools, and being still unpaid; and that it would

be necessary to collect the taxes under the act in order to meet this indebtedness. The defendants further alleged that at an election held June 15, 1906, to elect trustees, T. J. Sellers and other petitioners voted; that the trustees were induced by the continued acquiescence of petitioners to enter into contracts with teachers for a period of nine months, beginning the first Monday in September, 1906, and to make arrangements to transport a number of children to school by wagon; and that, in view of the past conduct of petitioners and the great and disastrous confusion which would be created by the interruption of the school system of the district, as well as the damage which would result to the teachers and trustees engaged in the operation of the schools, it would be inequitable and unjust to grant to petitioners the injunction prayed for.

At the interlocutory hearing the plaintiffs offered an amendment to their petition, but the court declined to allow it or to consider the allegations made therein. Certain persons representing themselves to be citizens and taxpayers presented a petition in which they asked that they be made parties plaintiff to the litigation; they were not, however, allowed to intervene. The plaintiffs then made a motion to strike the defendant's answer on the ground that it set forth no sufficient reason why the prayers of the petition should not be granted. This motion was overruled, and the case was heard on its merits, the judge declining to grant the injunction.

*Powell & Pottle* and *E. E. Cox,* for plaintiffs.

*Pope & Bennet,* for defendants.

Evans, J. (After stating the facts.) 1. In *Barber* v. *Alexander,* 120 *Ga.* 30, and in *Neal* v. *McWhorter,* 122 *Ga.* 431, this court held that the school law contained in the Political Code, §§ 1338-1408, was a general law, by which it was declared that each county shall comprise one school district, and that a special law creating a district within a district destroys territorial uniformity and sets apart one locality in the State in which an existing general law is not longer to be of force. The special act describing a circumscribed area of a county as a school district and providing for the establishment and operation of schools within the defined area was adjudged to be null and void, because it opposed the constitutional inhibition that "no special law shall be enacted in any case for which provision has been made by an existing general law." The local acts involved in those decisions were enacted before the ratification by

the people of the amendment to art. 8, sec. 4, par. 1, of the constitution. The attack on the constitutionality of the local act incorporating the Hopeful school district is the same as was made on the special laws in those cases; and unless the former act is saved by the amendment, under the authority of the cited cases it will have to be pronounced unconstitutional.

Art. 8, sec. 4, par. 1, of the constitution originally was as follows: "Authority may be granted to counties, upon the recommendation of two grand juries, and to municipal corporations upon the recommendation of the corporate authority, to establish and maintain public schools in their respective limits, by local taxation; but no such local laws shall take effect until the same shall have been submitted to a vote of the qualified voters in each county or municipal corporation, and approved by a two-thirds vote of persons qualified to vote at such election; and the General Assembly may prescribe who shall vote on such questions." Civil Code, § 5909. It was amended so as to read: "Authority may be granted to counties, militia districts, school districts, and to municipal corporations, upon the recommendation of the corporate authority, to establish and maintain public schools in their respective limits by local taxation; but no such laws shall take effect until the same shall have been submitted to a vote of the qualified voters in each county, militia district, school district, or municipal corporation and approved by two-thirds majority of persons voting at such election, and the General Assembly may prescribe who shall vote on such questions." Acts of 1903, p. 23. The subject-matter of this article of the constitution is "Education." The first section declares that "there shall be a thorough system of common schools for the education of children in the elementary branches of an English education only, as nearly uniform as practicable, the expenses of which shall be provided for by taxation or otherwise." The next section creates the office of State school commissioner; the third section sets apart certain funds and incomes for the support of the common schools. Then follows the fourth section, above set out, which empowers the legislature to confer authority on the taxing districts therein named to establish and maintain public schools in their respective limits by local taxation. This section does not attempt to locate any school district, but constitutes each school district, when located and established, as a taxing district. The effect of the amendment

to section 4 is to enlarge the number of taxing districts, and not to provide for the manner of their creation. The legislature may ·establish and define the location of school districts by a general law, or, in the absence of any general law, it may by special act incorporate a designated area into a school district. But the legislature can not by a special act create a school district so long as there is of force a general law whereby school districts are defined and established. It is restrained from so doing by the constitution, and the amendment to section 4 of article 8 does not authorize · the General Assembly by special act to create a school district so long .as there is of force an existing general law by which school districts .are created, which embrace an entire county, and no provision is therein made for segregating a portion of the territory of the county into a local school district which shall be governed by other regulations than those named in the general act.

2. It is urged that the parties complaining of the unconstitutionality of the law are estopped from denying that the law .is ·constitutional, for the reason that they were active in having it put into operation. In cases where a public improvement is made, or .a tax is laid, upon the petition of the owners of adjacent property, ·or other persons interested, and pursuant in form to and in compli-.ance with the statutes of the State, or where the property owners in some way actively encourage the assessment, a kind of estoppel .arises against the persons who made the petition or gave the encouragement. Gray, Lim. Tax. Power, § 1999a. A defense of this nature rests less on the principle of estoppel than it does on the liability of implied contract that an abutting landowner, having received the benefit of the improvement made, because of his active participation in procuring the improvement under an invalid law, will be required to pay for it according to the terms of such law. But whether we denominate a defense of this kind as an estoppel ·or an implied assumpsit, such defense does not go to the validity of the law, but is upheld because it would be inequitable to restrain the collection of a tax to pay for an improvement which the complaining party procured to be made: "Courts can not, by the execution of an unconstitutional law as law, supply the want of power in the legislative department." O'Brien *v.* Wheelock, 184 U. S. 489. Nor will this doctrine of estoppel be applied to a taxpayer ·who has done nothing to encourage the legislation or the incurrence

of expense on the faith of the invalid or unconstitutional law; as to him, the unconstitutional law is no law, and if he has not estopped himself, he may resist the collection of the tax levied under such invalid law. This doctrine of estoppel by conduct is subject to a still further limitation: the person said to be estopped will not be concluded as to acts not done strictly within the purview and by authority of the invalid act. If the officials charged with the enforcement of a statute which subsequently turns out to be unconstitutional incur any expense unauthorized by the law, they can not by the levy of a tax compel a taxpayer to defray such illegal expense. And it is further to be observed that parties are not estopped from questioning the constitutionality of an act in the supposed validity of which they have acquiesced, as to such matters as yet remain to be done in the future under the act and as to expenses not yet incurred. Mott v. Hubbard (Ohio), 53 N. E. 47. In the present case, the plaintiffs do not seek to escape payment for the benefits of the local school system which they and their neighbors have derived in the past. On the contrary, the plaintiffs simply ask that a halt be called in the illegal enforcement of the local school law, that the school affairs of the locality in which they live shall again assume a legal aspect, and that no expense, to be met by local taxation, be incurred by the trustees for the future operation of the schools. The reply of the trustees is that they have already gone so far in making arrangements to operate the schools for another year, and have incurred such an indebtedness on the faith of the plaintiffs' apparent acquiescence in the project, it would be inequitable for the courts at this time to interfere therewith, notwithstanding there is no authority of law for carrying it into effect.

The defendants disclose by their answer, (1) that in financing their illegal school project they have, without any authority under the act of 1905, borrowed two inconsiderable sums of money from private parties, with the understanding that repayment should be made out of the local school tax fund which they expected to collect in the fall of the year. Granting that these private individuals may have been misled into parting with their money by the belief that the plaintiffs recognized the school act as valid, yet the former were bound to know that the trustees, under that act, were without authority to anticipate the realization of funds for school

purposes under the tax levy therein provided for; and certainly the plaintiffs are not to be held accountable for an existing state of facts brought about by the illegal conduct of the trustees in overstepping their supposed authority, for the plaintiffs were not bound to anticipate that the trustees would violate the statute which gave them being. The defendants show (2) that the trustees have entered into contracts with teachers, in no part as yet performed, for the scholastic term which was to have begun on the first Monday in September, 1906. The plaintiffs have never received any benefit under these executory contracts for which in equity they are bound to account; the contracts themselves are not legally enforceable, since they depend for their vitality on an unconstitutional act; and, so long as they remain executory, the courts can not, under the doctrine of estoppel or otherwise, indirectly give full effect to that act by treating these contracts as valid and subsisting obligations upon the taxpayer.

And lastly, the plaintiffs are said to be estopped, because the trustees, in the month of January preceding the filing of the petition, had bought on credit a mule, as well as feed for the same, and this indebtedness was incurred on the faith of the plaintiff's acquiescence in the validity of the local act. It is not necessary to question the propriety or legality of the purpose of the board of school trustees to furnish transportation to pupils residing at a distance from the schoolhouse established by them, the expense to be paid out of the fund realized from a tax levied for the maintenance of the school. For the purposes of this case, we may concede that the purchase of a mule and provender came within the purview of the act, and was proper in order that some of the pupils might be transported to the school. As we have pointed out, the plaintiffs are not estopped by the executory contracts with the teachers, nor by the unauthorized loans; and as the act is unconstitutional, the trustees can not further legally maintain the school. It would therefore seem absurd to hold that the plaintiffs are estopped to question the legality of the tax, because of the alleged necessity of raising funds to pay for a mule which can not be longer used in connection with the school. Rather would it be more equitable to say that the trustees should return the mule and the unused provender, if any, to the seller, who at the time he sold the same was legally chargeable with knowledge, not only

of the unconstitutionality of the local school act, but that the trustees had no authority thereunder to make purchases on credit and pledge as security for payment therefor the fund which they expected to realize from the imposition of an illegal tax. The buying of the mule and provender on credit stands upon the same footing as the unauthorized borrowing of money to be used for school purposes.

In reaching the conclusion, as we do, that there was no merit in the defense of estoppel interposed by the defendants, we have not overlooked the case of *Irvin* v. *Gregory*, 86 *Ga.* 605, wherein it appeared that a majority of the complainants had voted in favor of the approval of a local school law and all of them had acquiesced in the result of the election until after a school was established and put into operation. The school law was, as the court ruled, a constitutional and valid law, save as to a minor detail which did not affect its validity as a whole. It provided that it should not go into effect until ratified by a two-thirds vote of the qualified voters of a town, and that notice of the election should be published once a week for four weeks. The publication was begun in time, but the notice was inadvertently omitted from the fourth issue of the newspaper, so that the notice appeared only three times. In dealing with this branch of the case, Chief Justice Bleckley recognized that this omission would have been fatal to the validity of the election, if prompt action had been taken by the plaintiffs to prevent the local act from being carried into operation; but he stated that the conclusion of the court was that the failure to publish the notice in strict conformity with the terms of the act was a mere irregularity and could not be taken advantage of by the complainants, when more than two-thirds of the qualified voters responded to the notice given and actually voted for ratification of the act, and the complainants and all others concerned acquiesced in the result of the election and waited till the school was established and put into operation before attempting to restrain the collection of the local tax authorized to be levied by the act. The difference between that case and the one now in hand is apparent; the ruling in the former was analogized to decisions laying down the principle that irregularities in the holding of an election will not necessarily invalidate it, and may be waived by failure to contest the election; in the present case, the plaintiffs do not undertake to set aside the elec-

tion adopting the local act of 1905, but to assert that the General Assembly was without authority to pass that act, and nothing done at the election or afterwards could operate to render it a constitutional law. The position of the plaintiffs is unanswerable; and as there now appears to be no reason why the further enforcement of this invalid statute should not be restrained, we hold that the injunction prayed for should have been granted.

What is said above disposes of the controlling questions presented by the bill of exceptions, and it is unnecessary to deal specifically with each of the assignments of error made, since the only matter now for decision is whether or not the plaintiffs were entitled to an interlocutory injunction. *Foster* v. *Case, 126 Ga. 714.* *Judgment reversed. All the Justices concur.*