## VAUGHN v. SIMMONS et al.

1. The act of August 16, 1909 (Acts 1909, p. 1183), as amended by the act of August 13, 1910 (Acts 1910, p. 953), described a considerable rural territory in Pulaski county, declared it to be incorporated as "the Town of Mitchell's District," and conferred on a board of school trustees power to establish and maintain a system of public schools therein in a manner different from that provided by the general school laws, but prescribed no municipal duties or powers other than the maintenance of such schools, save in the general statement that the corporation should be styled by the name stated, "with all the powers, duties, and privileges usual to municipal corporations." Jurisdiction over roads was negatived, and no power of taxation was given except to the trustees for school purposes. Held, that such act, as amended, was unconstitutional as seeking to create a special school district, where provision had been made for the creation of such districts by general law.

2. Such an act as that above described did not come within the provision of the constitution which declares that authority may be granted by the legislature to municipal corporations, "upon the recommendation of the corporate authority, to establish and maintain public schools in their respective limits by local taxation;" and this is true though the act provided for a submission to the voters of the district of the question whether they would ratify or refuse to "ratify the act."

(a) Under the preceding ruling, it is unnecessary to decide whether the clause of the constitution just quoted authorized the creation of a municipal corporation and the conferring by the act creating it of power to establish public schools, subject to an election, or whether the words "upon the recommendation of the corporate authority" contemplated an existing corporate authority to make such recommendation before the power to establish schools was granted.

3. Where an execution for a school tax under such an act was levied by a constable, an equitable petition praying that the constable be enjoined from enforcing the execution, and that the defendants, other than the constable, be enjoined from exercising any powers under the act, was not subject to dismissal on demurrer, on the ground that it made the persons claiming to act as school trustees defendants in their individual and not their official capacities.

JANUARY 14, 1913.

Equitable petition. Before Judge Martin. Pulaski superior court. September 2, 1911.

Freeman Vaughn filed a petition on behalf of himself and such others as might join with him, alleging in substance as follows: He is a resident of that portion of the territory of Pulaski county known as the Town of Mitchell's District, and is a taxpayer therein. On August 16, 1909, an act was passed to incorporate such district. Acts 1909, p. 1183 et seq. This was amended in minor particulars by the act of August 13, 1910 (Acts 1910, p. 953). Prior to the

act of 1909 there existed and was conducted, under the general school law of the State, a school known as the Midway School, which had acquired a considerable amount of real and personal property, and had contracted debts aggregating about $400, which indebtedness was a charge on the property of such school. After the passage and ratification of the above-mentioned act, the trustees of the public-school system organized under it acquired and took over all of the property of the Midway School, and assumed the liabilities thereof. In the act no authority was given to raise taxes for any other purpose than to defray the expenses of the school system for the scholastic year. The school authorities borrowed about $500 for the pretended purpose of using it for the maintenance of the school system, but in fact did so in order to discharge the indebtedness, and have included in the amount of money to be raised by taxation a sufficient sum to pay off the unlawful debt. Execution has been issued against the plaintiff by the school authorities, and it has been levied by Jennings, a constable of the county, upon certain property of the plaintiff, and a sale has been advertised. The act of 1909, as amended by that of 1910, is unconstitutional. Various grounds of unconstitutionality were alleged, among them being that the act was violative of article 1, section 4, paragraph 1, of the constitution, and also of article 8, section 4, paragraph 1. The persons who were alleged to be acting as trustees of the school system of the Town of Mitchell's District, the ex-officio mayor and aldermen, and the constable who made the levy were made parties defendant. It was stated that the defendants, other than the constable, were acting without authority in any of their acts and doings set forth, "and that said suit is brought against them, not in their official capacity, but solely in their individual capacity." The prayers were, that the constable be enjoined from proceeding to enforce the execution against the property of the plaintiff; that the other defendants be enjoined from further exercising any power under the acts above mentioned; and for process and general relief.

The act of 1909 (Acts 1909, p. 1183) contained 27 sections, covering about eleven pages of the published acts. The first section declared that the Town of Mitchell's District was incorporated, the limits being defined by reference to various land lots, the county line, and the Ocmulgee river. The sole reference in the entire act

to any municipal powers or duties, other than the government of the school system, was contained in the second section, as follows: "That the governing authority of said town shall be vested in the mayor and six aldermen, who shall be bona fide citizens, residents of the said town for the full term of six months next preceding their election to office, and said municipal government shall be styled the Town of Mitchell's District, and by that name are hereby made a body corporate with all the powers, duties, and privileges usual to municipal corporations." Section three declared, that, until an election for mayor and aldermen should be held, a named person should be mayor, certain other named persons should be aldermen, and another person should act as clerk and treasurer of the town. Section four declared that there should be established and maintained in said town a system of public schools, the management of which should be vested in a board of trustees, and that, until their successors were elected and qualified, the board should be composed of certain named persons, the same who had been previously named to act as mayor and aldermen, and with the same person as secretary and treasurer who had previously been named as clerk and treasurer. Section five provided for an election for trustees of the school on a fixed date and periodically thereafter, with power to elect one of their number president, and one secretary and treasurer. Section six declared, that, after the first election, the board of trustees so elected should be ex-officio aldermen of the town, except that the president of the board of trustees should be ex-officio mayor, and the secretary and treasurer of the board should be ex-officio clerk and treasurer; "the object of this provision being that after the first election held under this act it will not be necessary to elect mayor and aldermen eo nomine, but that the members and officers of the board of trustees for the time being shall exercise the rights and duties of the mayor, aldermen, and clerk and treasurer of said town." By section seven it was declared that any vacancies on the board of trustees or in the offices thereof should be filled by the board for the unexpired terms. The act then proceeded to deal with the regulation of the schools, the powers of the trustees in regard to them, the terms, the admission of pupils, the number of schools for white and colored children, the right to receive the share of the school fund "of the county and State" to which the schools thus established

were entitled, and other matters of school regulation. The school board was authorized and required to levy a school tax not exceeding a stated per cent. The secretary and treasurer of the board was to assess the valuation of the property "within the said district for taxation," to collect such tax, and issue executions against defaulters. After advertisement by putting up notices at three public places, personal property was to be sold "before the schoolhouse door established for white children in said town." Real estate was to be sold by the sheriff. The taxes when collected were to be delivered to the secretary and treasurer of the board of trustees, and expended only upon order of the board in defraying the expenses of conducting the schools. Section twenty-two provided for the holding of an election "for the purpose of ratifying or refusing to ratify this act." Section twenty-four declared that, immediately after the ratification of the act, "all officials of said town shall take the following oath: 'I, ——————, do swear that I will faithfully discharge the duties required of me by the terms of the act providing for a system of public schools in Mitchell's District, Georgia.'" Section twenty-six declared that nothing in the act should be construed to take away from the county authorities their jurisdiction over the public roads and bridges "in said incorporated territory, but that said county authorities shall continue to exercise jurisdiction thereover, and to work and repair the same, as they do in other parts of the county." By the act of 1910 certain changes were made as to the number of officers, and the manner of collection of the school tax by the secretary and treasurer of the board of trustees "of the said Mitchell's District public schools." But there was nothing which was material to the question under consideration.

*H. E. Coates* and *H. F. Lawson,* for plaintiff.

*W. L. & Warren Grice,* for defendants.

LUMPKIN, J. (After stating the foregoing facts.)

1, 2. Provision has been made, by general laws in regard to the public-school system of the State, for creating school districts, and for determining the question of local taxation. Civil Code, § 1531 et seq. In dealing with the subject broadly the legislature doubtless considered the advantages to be derived from general laws and from having uniformity and system in the administration of educational affairs, instead of having the State cut up into an un-

limited number of special school districts, with varying and conflicting regulations, laws, and methods. At any rate, the enactment of general laws in regard to the common-school system of the State accorded with the spirit of the constitution, which declares that "there shall be a thorough system of common schools for the education of children, as nearly uniform as practicable." Article 8, section 1, paragraph 1 (Civil Code, § 6576, Acts 1911, p. 46). By article 1, section 4, paragraph 1, of the constitution (Civil Code, § 6391), it is declared that "Laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law." It is true that in article 8, section 4, paragraph 1 (Civil Code, § 6579), it is provided that "Authority may be granted to counties, militia districts, school districts, and to municipal corporations, upon the recommendation of the corporate authority, to establish and maintain public schools in their respective limits by local taxation," after an election in which two thirds of the persons voting shall approve it. The two sections should be treated as in harmony with each other. The latter did not provide the method of laying out school districts, nor destroy a system of doing so created by an existing general law. The constitution never contemplated that, in spite of the provisions of the general law, the territory of the State might be cut up by special enactments, and particular school districts be taken out of the provisions of such law. Nor can this result be reached and the uniformity of the school laws be destroyed by merely calling a school district a municipal corporation. As the population in a particular territory becomes more dense, certain local problems arise, such as those involving the preservation of good order, of public health, public highways, or the like, which are peculiar to the condition there existing. From this arises the incorporation of a municipality. Among other things which may properly be made incidental to municipal government is education within its boundaries. But this is an entirely different thing from merely laying out a wide area of country as a school district, and seeking to bring it within the provision of the constitution by calling it a municipal corporation.

Several efforts have been made to create special school districts inconsistently with the general school law. In *Barber* v. *Alexander,*

120 *Ga.* 30 (47 S. E. 580), (which arose under the general school law, prior to the passage of the act of 1905), an act was passed seeking to create a special school district, with powers conferred upon the local authorities different from those provided by the general law. It was held to be unconstitutional. In *Neal* v. *McWhorter*, 122 *Ga.* 431 (50 S. E. 381), an act was passed to incorporate a certain town. It also undertook to extend the corporate limits over an area about four miles square, to establish a public-school system therein, and to create a board of school commissioners with power to levy taxes for school purposes on all the property in the area described, but it limited the exercise of all municipal functions to an area embraced in a circle one mile in diameter located inside the square. It was held that the act, at least in so far as it applied to the territory within the square but outside of the circle, was unconstitutional, in that it was an attempt to establish a school district by evasion, and was a special law enacted in a case for which provision had been made by an existing general law. In the opinion Mr. Justice Candler said: "Article 8, section 4, paragraph 1, of the constitution of Georgia (Civil Code [1895], § 5909) authorizes the General Assembly to grant to municipal corporations power to establish and maintain public schools 'in their respective limits' by local taxation; but this does not carry with it the right, by palpable evasion, to incorporate a school district and mark off a town inside of it, the town to exercise all the municipal functions and the school district none." In *Sellers* v. *Cox*, 127 *Ga.* 246 (56 S. E. 284), there was considered an act passed August 22, 1905, and entitled "An act to incorporate the Hopeful school district in Mitchell county," with provisions different from those of the general school law. It was held unconstitutional. In the opinion (referring to article 8, section 4, paragraph 1, of the constitution, as amended by the act of 1903 and its ratification) Mr. Justice Evans said: "This section does not attempt to locate any school district, but constitutes each school district, when located and established, as a taxing district. The effect of the amendment to section 4 is to enlarge the number of taxing districts, and not to provide for the manner of their creation. The legislature may establish and define the location of school districts by a general law, or, in the absence of any general law, it may by special act incorporate a designated area into a school district. But the

legislature can not by a special act create a school district so long as there is of force a general law whereby school districts are defined and established. It is restrained from so doing by the constitution, and the amendment to section 4 of article 8 does not authorize the General Assembly by special act to create a school district so long as there is of force an existing general law by which school districts are created," etc.

Is the act before us one creating an actual municipal corporation, with incidental powers as to its school system, or is it a special law seeking to create a school district in antagonism to the general school law, by merely labeling the school district with the name of a town? The thing declared to be incorporated was "the Town of Mitchell's District in Pulaski county." A considerable territory was described by land-lot lines, a river, and the county line. One brief section alone made any mention of municipal authority other than the maintenance of a system of public schools within the district described. In that the entire reference to municipal powers is contained in about a line and a half, where, after declaring that the style of the incorporation should be as above stated, the words were added: "with all the powers, duties, and privileges usual to municipal corporations." Certain persons were named to act as mayor and aldermen until an election, and the same persons were named to act as a board of trustees for the school system until an election should be had at a date named. It was declared that after the election of successors to the board of trustees, they should be ex-officio aldermen, and the president of the board should be ex-officio mayor, and it should not be necessary to elect a mayor and aldermen eo nomine. Vacancies on the board were to be filled by the board itself until the next election. Special provisions were made in regard to the maintenance and conduct of the schools within that district, and in regard to the powers of the trustees, different from those under the general school law. The only provision for any taxation within the incorporate limits was for a school tax, to be determined by the trustees and not to exceed a certain per centum of the taxable property. The sole oath of office prescribed was to faithfully discharge the duties required of the affiant by the terms of the act "providing for a system of public schools in Mitchell's District, Georgia." The county authorities were to retain jurisdiction over the roads and bridges "in said

incorporated territory," and work and repair them "as they do in other parts of the county." A somewhat novel provision was that the act should be submitted to the voters within the district prescribed, for ratification or rejection. If two thirds of the voters voting at the election cast their ballots for ratification, the act was to become immediately operative. But if the result was against ratification, the board of trustees named in the act were to order other elections in like manner every six months until the act was ratified. In this act, covering about eleven pages, and comprising twenty-seven sections, we fail to find any duties required to be discharged by the municipal authorities except in regard to the schools. A so-called municipal corporation, with nothing to do except to establish and manage schools in a rural school district, nothing with which to do anything else, and no officers except school trustees, is not a municipal corporation such as is contemplated by the constitution when it authorizes the legislature to empower municipal corporations, upon recommendation of the corporate authority, to establish a school system.

We recognize the general rules as to the power of the legislature to create a municipal corporation in broad terms, and as to the disinclination of the courts to hold acts to be unconstitutional, unless they are clearly so. But the fundamental law also declares that "Legislative acts in violation of this constitution, or the constitution of the United States, are void, and the judiciary shall so declare them." We think this act on its face falls within that category. The threads of legal semblance which are to be found within the act are so interwoven with the general warp and woof of unconstitutionality that they can not be separated and adjudged to constitute the expression of the legislative purpose. Nor does the rule that the existence of a municipality can not be attacked collaterally apply. The point made is that the act is unconstitutional and void, and that there has been no incorporation. See *Worth County* v. *Crisp County*, ante, 117 (76 S. E. 747).

Having held the act to be unconstitutional for the reasons stated, it is unnecessary to discuss other objections to it, such as that it contained matter differing from and not covered by the title, that the constitutional provision as to granting power to municipal corporations, "upon the recommendation of the corporate authority," to establish and maintain public schools, contemplates mu-

nicipalities in existence, and not the creation of a municipality and the grant of such authority in the charter, before there are any corporate authorities to make the recommendation, etc. On the subject of the impropriety of submitting distinct issues to voters in such manner as to compel them to agree to all or none, especially if the incurring of a debt is involved, see *Cain* v. *Smith,* 117 *Ga.* 902, 905 et seq. (44 S. E. 5).

3. It was argued on behalf of the defendants in error that the petition was brought against the defendants, except the constable, in their individual capacity, and that this furnished ground for dismissal. The constable was proceeding to make a sale under a levy. An injunction was sought against him in his official capacity, and against the other defendants, to restrain them from exercising any powers under the act. If the act creating certain officials was unconstitutional, they would seem to have no official capacity. This furnishes no ground for dismissal. It was error to sustain the demurrer. *Judgment reversed. All the Justices concur.*