JAMES *et al. v.* CITY OF BLAKELY *et al.*

1. The nineteenth section of the act of December 18, 1900 (Acts 1900, p. 219), which sought to create a district lying outside of the actual corporate limits of the City of Blakely, and extending to what was termed the "school limits," and to prescribe for such territory regulations as to schools and taxation therefor, different from those established by the general school laws, was to that extent unconstitutional as being a

special act different from an existing general law on the subject, which is prohibited by the constitution.

2. The fact that the petition showed on its face that, under the provisions of the section of the act above mentioned, an election was held in 1907 to determine the question of taxation for school purposes within the "school limits," and that the mayor and council of Blakely were preparing to levy such a tax for the year 1914, did not suffice to show an estoppel on the plaintiffs, who were citizens and taxpayers, and who filed a petition to enjoin the collection of such taxes from them.

FEBRUARY 10, 1915.

Petition for injunction. Before Judge Worrill. Early superior court. October 20, 1914.

*A. H. Gray,* for plaintiffs. *W. G. Park, Glessner & Collins,* and *Little, Powell, Hooper & Goldstein,* for defendants.

LUMPKIN, J. By the act of December 18, 1900 (Acts 1900, p. 219), the City of Blakely was incorporated in lieu of the town of Blakely. In the first section of the charter it was declared that "the territorial limits of the City of Blakely shall be identical with the present territorial limits of the town of Blakely, except as is otherwise specified in this act." The following sections made provisions in regard to the mayor and council, their election and qualification, the qualification of voters, the other officers of the city, the police court, and other matters appropriate to a municipal charter. All of these, until the 19th section was reached, dealt with the corporate limits as being the same as those of the town of Blakely, which at that time included an area one mile square. In the sixth section it was declared that "Only citizens of the City of Blakely shall be eligible to be elected mayor or councilmen." In section seven, where the qualification of voters was declared, it was provided that all persons eligible to vote for members of the General Assembly, "who shall have resided in said city for six months preceding such election, and who shall have paid all taxes required of them by the City of Blakely," and, in general elections for mayor and council, who may have registered as required, should be qualified voters. In these and other sections, dealing with taxation and other municipal matters, it is evident that the municipal corporation was dealt with as being confined within the corporate limits of one mile square. Section nineteen began with the words, "There is hereby established a system of public schools for the City of Blakely." It then proceeded to make provision for a board of edu-

cation, who should control such system. It declared that "The corporate limits of the City of Blakely, for the purposes of this section, shall include all the territory within the following bounds," describing territory in the form of a square with each side measuring six miles, thus containing an area of thirty-six square miles, while the municipal corporation proper contained one square mile. As to the larger territory it was provided that "jurisdiction of said city for all the purposes of this section shall extend over said territory, which said territory is referred to in this act by the words 'school limits.'" It was further declared in this section that the city council should elect a board of education, which body should elect a commissioner, and that "said commissioner shall have the same jurisdiction, authority, powers, and duties within said schools of Blakely as county school commissioners now have under the laws of this State, but the jurisdiction, authority, powers, and duties of such commissioner may be changed by the city board of education." It was also declared that there should be paid to the commissioner of the city schools of Blakely the pro-rata share of all funds for educational purposes from any source coming to Early county, in proportion as the number of children of school age "within said school limits of Blakely shall be to the entire school population of Early county." The same section further provided that the city council of Blakely might maintain the public schools of said city by taxing all the property within "the school limits," not exceeding two tenths of one per cent. ad valorem, provided two thirds of the persons qualified to vote for that purpose should cast their ballots in favor of school tax. For this election any person who had resided in the school limits for six months, and was qualified to vote for members of the General Assembly, might register and vote. By the twentieth section of the charter it was provided that the city council should have authority to establish, maintain, and enforce quarantine regulations and pass all needful ordinances in respect thereto; and that "their jurisdiction for this purpose shall extend as far as the limits known as the school limits of said city." It also declared that the city council might provide by ordinance for impounding animals running at large, and that the right to prevent them from running at large in the city might extend to the limits known as the school limits. By section twenty-one it was declared that any process, summons, notice, execution,

or other like paper required to be served by the charter or ordi-
nances of the city might be served and executed, and arrests might
be made, by the marshal or any police officer of the city, unless
otherwise provided, and at any place within the limits defined as
the "school limits" of the city. By section twenty-two it was de-
clared that the city council might condemn or purchase property
and exercise control over the same anywhere within the territory
designated as the school limits of the city, and might, by ordinance
and through their officers, "regulate and control the same for any
public purpose."

By the act of 1902 (Acts 1902, p. 347) the corporate limits of
the City of Blakely were changed so as to comprise a square having
a side two miles in length. By the act of 1903 (Acts 1903, p. 456)
it was declared that the city council of Blakely should have the
right to exercise the power of eminent domain, and that they might
condemn or purchase property for public purposes anywhere within
what were known as the "school limits" of said city; and provision
was made as to certain voting places in elections.

1. A careful examination of the act incorporating the City of
Blakely, and of the amendments thereto, will show that the legis-
lature provided for three things: (1) the incorporation of a mu-
nicipality, having general powers as such, within defined limits,
which at first contained only one square mile, and later were en-
larged so as to include four square miles; (2) the creation of a
school district embracing thirty-six square miles, surrounding and
including the comparatively small corporate limits of the actual
municipality, and extending to what were denominated "the school
limits;" and (3) the conferring upon the municipal corporation of
certain powers beyond its actual corporate limits and extending to
the school limits. The charter itself distinctly declared that the
corporate limits of the City of Blakely should be identical with
those of the town of Blakely, "except as is otherwise specified in
this act." The specification of greater limits was made in the
nineteenth section, creating a public-school system and defining
the district in which it should be operated. Except as next men-
tioned, outside of the actual corporate limits none of the functions,
powers, or responsibilities of the municipal government extended
save for the purpose of operating a school system in a district con-
taining thirty-six times as much territory as the municipality

proper. The conferring upon the municipal authorities of the right to exercise certain police powers beyond the limits of the municipality, and within certain other limits, whether specifically described in that connection or defined by reference to the "school limits," did not operate to include this entire territory in the corporate limits of the city. It simply extended the powers of the city for certain purposes beyond its limits. It is too plain to require argument that the purpose was to authorize the City of Blakely to establish and maintain public schools, not merely within its corporate limits, but within a large territory called the "school limits." And this amounted to creating a school district surrounding and including the corporate limits of the city.

It has been held in some jurisdictions, that, if it violates no constitutional provision, for police purposes the legislature may confer upon a municipal corporation certain powers which may be exercised beyond the corporate limits. Thus it has been declared, that, if there is no contrary constitutional limitation, authority may be conferred to obtain property beyond the limits of the municipality, for the purpose of constructing and maintaining a system of waterworks, and that it may be policed to protect and prevent the water from becoming infected or foul; that the legislature may authorize the extension of sewers beyond the corporate limits, so as to preserve the public health; that in connection with the power conferred on a city to license barrooms for police purposes, but not as a means of raising revenue, authority may also be conferred to require such licenses for a distance beyond the corporate limits, so as to make effectual the main purpose and prevent its evasion. See Jordan v. City of Evansville, 163 Ind. 512 (72 N. E. 544, 67 L. R. A. 613, 2 Ann. Cas. 96); Van Hook v. City of Selma, 70 Ala. 361 (45 Am. R. 85); 28 Cyc. 703. Without stopping to discuss the question of what police powers may be thus conferred in this State, or the question of reasonableness of ordinances passed in regard to them, the legislature can not extend the power of a municipal corporation beyond its own limits, if to do so would violate a provision of the constitution. The contention that the charter of Blakely created a municipal corporation with two limits, one called a "prime" limit, and the other called a "secondary" limit, each constituting corporate limits for different purposes, is not tenable. Nor is the argument well founded by which it is sought to analogize

such legislation to the power of municipal authorities to enact ordinances making different provisions for different parts of a city, having a legitimate basis of differentiation—such as defining fire limits, requiring watchmen at railroad crossings, regulating the speed of vehicles in populous districts, and the like. Where a legislative body has such authority, they may make legitimate classifications. But this has no relevancy to the contention that there may be two corporate limits of the same municipality, one for general corporate purposes, and the other for the purpose of maintaining a school system. Nor does the conferring of the powers contained in sections 20, 21, and 22 of the charter, if valid, serve to save the conferring of another power extending over the general school district or limits, if that power can not be constitutionally conferred.

The question, therefore, resolves itself to this: Was the nineteenth section of the charter of Blakely invalid as being an effort to create a special school district, when there was a general law providing for school districts and uniformity in regard to them, and when the constitution of the State (art. 1, sec. 4, par. 1, Civil Code (1910), § 6391) prohibited the enactment of a special law in a case already provided for by a general law? Or, if the section mentioned was not invalid at the time when it was enacted, was it repealed by the general school law enacted in 1905 and amended in 1906 (Acts 1905, p. 425, Acts 1906, p. 61, Civil Code (1910), § 1531 et seq.) ? On this subject we think the present case is controlled by the decisions in *Barber* v. *Alexander,* 120 *Ga.* 30 (47 S. E. 580) ; *Neal* v. *McWhorter,* 122 *Ga.* 431 (50 S. E. 381) ; *Sellers* v. *Cox,* 127 *Ga.* 246, 250 (56 S. E. 284) ; *Vaughn* v. *Simmons,* 139 *Ga.* 210, 214 (76 S. E. 1004) ; *Edalgo* v. *Southern Railway Co.,* 129 *Ga.* 258 (58 S. E. 846).

In *Barber* v. *Alexander,* supra (decided in 1904), it was held that an act passed in 1903, creating a special school district in Cobb county, was unconstitutional as violating the uniformity required on that subject under existing laws. In *Neal* v. *McWhorter,* supra (decided in March, 1905), an act incorporating the town of Menlo undertook to incorporate an area about four miles square, to establish a public-school system therein, and to create a board of school commissioners with power to levy taxes for school purposes on all of the property in the area described, but limited the exercise of all municipal functions to an area embraced in a circle one

mile in diameter, located inside the square. It was held, that, in so far as the act applied to the territory within the square but outside the circle, it was unconstitutional, in that it was an indirect effort to establish a school district not within the municipal limits within the meaning of the constitution, and was a special law enacted in a case for which provision had been made by an existing general law, which was prohibited by the constitution of 1877. If, as we have sought to show in the present case, the large area of thirty-six square miles was not in any proper sense within the corporate limits of Blakely, the decision last cited is controlling.

In 1905 a general act was passed, dealing with the subject of laying out counties into school districts; and this was amended in 1906 (Acts 1905, p. 469; Acts 1906, p. 61). Since the passage of those acts it has been held that they abrogated special school districts previously established outside of municipalities, and that no such school district could be laid out in conflict with the general law; and it has been declared that merely naming a school district a municipal corporation, when in fact its only function was to operate a school, did not serve to make the establishment of such a school district constitutional. *Edalgo* v. *Southern Railway Co.*, *Vaughn* v. *Simmons*, supra. Under the constitution and these decisions, the act now under consideration must be declared unconstitutional in so far as it seeks to create a large school district or "school limits" around a comparatively small municipal corporation, with special methods of government and taxation different from those prescribed by the general law. Civil Code (1910), § 6391. The decision in *Singletary* v. *Chipstead*, 142 *Ga.* 208 (82 S. E. 547), turned on the bringing of two suits for the same cause of action, and it in no way conflicts with the ruling now made.

2. It was argued that the plaintiffs were estopped from instituting this proceeding. The presiding judge refused to sanction the petition or to grant an injunction on presentation of the petition. There is nothing on the face of it which shows that the plaintiffs are estopped. The mere fact that the election in regard to levying a tax for school purposes was held in 1907, and that the petition was filed to enjoin the levy of a tax in 1914, does not show an estoppel. The defendants rely on the decision in *Irvin* v. *Gregory*, 86 *Ga.* 605. But the allegations of the petition do not bring the case within the ruling there made. And that decision

has been several times discussed on the subject of estoppel. *Sellers* v. *Cox,* supra; *Jordan* v. *Franklin,* 131 *Ga.* 487, 488 (62 S. E. 673); *DuPre* v. *Cotton,* 134 *Ga.* 316, 321 (67 S. E. 876); *Landsdell* v. *King,* 134 *Ga.* 536, 537 (68 S. E. 102). Perhaps a person may so act as to estop himself from attacking the validity of a law; but an unconstitutional act can not become a valid law by age. Unconstitutionality is not like minority, a thing which may be outgrown in a few years. See, in this connection, *Battle* v. *Shivers,* 39 *Ga.* 405, 416; 1 Cooley's Constitutional Limitations (7th ed.), 259, 260. The constitution is the supreme law. It speaks to be obeyed.

*Judgment reversed. All the Justices concur, except Fish, C. J., absent.*