## DENNISON MANUFACTURING COMPANY *et al. v.* WRIGHT.

1. The action in this case is not one against the defendant in his official capacity and to enforce a liability against the State, but is one against him individually for an act which, while done in his official capacity, was wholly without lawful authority and beyond the scope of his official power. For this reason the petition was not demurrable on the ground that the action was one against the State, which could not be brought without its consent.

2. Payment of a license tax prescribed in paragraph 45 of section 2 of the general tax act of 1918 (Acts 1918, pp. 43, 53), by an agent or representative of a foreign corporation engaged wholly in interstate commerce, upon demand therefor by the Comptroller-General of this State, is not such a voluntary payment of such license tax as will prevent an action for damages against the Comptroller-General in his individual capacity for the exaction of payment thereof, said act making the failure of such agent or representative to register, or after having registered his failure to pay said license tax, a misdemeanor upon conviction of which he can be punished as prescribed in section 1065 of the Penal Code of this State.

3. The resident agent or representative of such foreign corporation engaged wholly in interstate business is not subject to the license tax prescribed by said act.

(a) A foreign corporation may come into this State, without obtaining leave or license so to do, for all the legitimate purposes of interstate commerce; and this State is without power to levy a license tax upon any resident agent or representative of such corporation in order to enable it to do such business within the State's borders.

(b) Where a foreign corporation rents and maintains an office in this State, with a stock of samples and a force of office employees and traveling salesmen, merely to obtain orders in this State and other States, subject to approval by its home office, for its goods to be shipped directly to its customers from its home State, such an arrangement is part of its interstate commerce, and not subject to a local excise tax.

4. The exaction and collection by the Comptroller-General of such illegal license tax under compulsion from such foreign corporation and its resident agent or representative renders him individually liable to them in damages.

(a) An unconstitutional statute, though having the form and name of law, is in reality no law, and confers no authority upon, and affords no protection to, an officer acting thereunder.

(b) If such act does not impose a license tax upon the resident agent or representative of such corporation, then the exaction and collection thereof from such company or its resident agent or representative would be an unconstitutional administration of said act, for which the Comptroller-General would be individually liable.

5. The court erred in sustaining a demurrrer to the petition on the ground that it set forth no cause of action.

No. 3802. November 17, 1923.

Complaint. Before Judge Bell. Fulton superior court. February 5, 1923.

Harry F. Christie and the Dennison Manufacturing Company brought suit against "William A. Wright, who is Comptroller-General of the State of Georgia," and made this case: The Dennison Manufacturing Company, a Massachusetts corporation with an authorized capital of $7,000,000, maintains its principal office and place of business and operates its factory in Framingham, Mass., being engaged principally in the business of manufacturing tags and other specialties and selling articles to dealers in Georgia and throughout the United States. In 1919 this company conducted its entire business and effected all sales at its said principal office. In so doing it employs sales agents, representatives, and traveling salesmen who solicit and take orders for its products throughout the United States. Each sales agent and representative travels and conducts his employment in a limited territory. The company determined all its sales policies and prices, employed all its sales agents and representatives, defined their duties, received and accepted or rejected all orders for its products secured by them or otherwise from dealers in Georgia and elsewhere in the United States, made all shipments of its products from said factory directly to buyers, sent out all invoices directed to them, and collected all accounts and received all moneys due from sales directly from buyers, and kept all original records relating to sales to Georgia buyers at its said principal office. The company conducted no business in 1919 in Georgia through the agency of Christie other than herein set forth. The company was engaged in interstate commerce alone in 1919 in Georgia. It did not then and does not now operate a factory or manufacturing plant, manufacture any of its products, or own any real estate in Georgia. Christie was employed exclusively by the company as sales agent and representative at an annual salary of $5000. Christie was engaged in no occupation and was conducting no business in Georgia other than that of soliciting and taking orders for its products, with and without the use of samples, for this company from dealers residing in Georgia, South Carolina, Florida, Alabama, and Mississippi, and forthwith transmitting such orders directly to the company at its said principal office for acceptance or rejection, and conducted said business subject to the supervision and control of the company at said office.

The company maintained an office in the City of Atlanta in its name, from which Christie so conducted his said employment in said State. In making sales of its products to dealers in said States, the company employed six additional sales agents and representatives who conducted their employment under the immediate supervision and direction of Christie, the district manager. None of said additional representatives had a place of business or office in Georgia. They conducted no business in Georgia other than that of soliciting and taking orders for its products with and without the use of samples, which were forthwith transmitted directly to the company at its principal office for acceptance or rejection. In the event of the acceptance thereof, shipments were made by the company directly to the Georgia buyers from without to within the State of Georgia. Of the orders taken by and under the direction of Christie during 1919 from dealers residing in said States in the course of his employment approximately 70 per cent. were from dealers in South Carolina, Florida, Alabama, and Mississippi, and approximately 30 per cent. were from dealers in Georgia. Christie employs one stenographer and one filing clerk in his office. All expenses incurred in maintaining said office, including rent, salaries, postage, incidental and traveling expenses incurred by him and said additional sales agents and representatives, are paid by Christie from a fund provided for that purpose by the company and deposited in a bank in Atlanta, with the exception that the salaries of said additional agents and representatives exceeding $1200 per annum are paid by the company directly from its principal office. Christie's salary is likewise so paid. Christie, in conducting his said office and employment, keeps no books, renders no invoices to buyers, collects no accounts, and receives no money due from sales to Georgia buyers, and maintains no bank account in Georgia as hereinbefore set forth in the name of the company. He keeps on file in said office letters received and copies of letters written by him, a record of orders taken under his direction, and other papers and records necessary to the conduct of his employment. No stock of the products of the company is kept or carried in Georgia in anticipation of future orders and for immediate delivery pursuant thereto. Christie keeps on hand in said office a few salesmen's samples which are not intended or offered for sale or sold, but are used solely in soliciting orders. The company

ships no products in Georgia except from its factory directly to Georgia buyers in original packages upon orders therefor received from such buyers, either directly or through the agency of Christie or otherwise, and accepted at its said principal office.

The act of August 20, 1918 (Acts 1918, p. 43), known as the general tax act, effective Jan. 1, 1919, as amended by the act of August 19, 1919 (Acts 1919, p. 45), imposes " upon every agent or representative of any foreign or non-resident corporation, said agent or representative having a place of business or office in this State, in addition to all other taxes now required of them by law, . . an annual license or occupation tax fixed in accordance with the capital stock of corporation represented by them," this statute imposing an occupation tax of $600 upon a corporation having a capital of over $2,000,000. It requires every sales agent or representative to go before the ordinary of the county in which he proposes to conduct said business and register his name, the business in which he proposes to engage, the place where it is to be conducted, and to pay in advance said occupation tax. Failure to register and pay said tax is a misdemeanor, and subjects such agent or representative, upon conviction, to the payment of a fine of not less than $1200, or to imprisonment as prescribed by section 1065 of the Penal Code, or to both. As applied and of force, said act requires this company to likewise register and in effect pay in advance said occupation tax of $600. To require Christie to register and pay said tax as a condition precedent to his right to engage in said business would necessarily result in depriving him of a lawful right to engage in such business, the same constituting interstate commerce free from taxation and burdensome regulations, and would necessarily result in depriving said company of its lawful right to engage in such interstate commerce in Georgia. Said tax act attempts to tax interstate commerce by imposing upon Christie a tax payable in advance for the privilege of engaging in and conducting said business in this State as the agent and representative of this company; and undertakes and attempts to impose a condition upon his lawful right to engage in interstate commerce by requiring him to register. For this reason said provisions of said act are unconstitutional and void, because they burden and regulate interstate commerce, contrary to the interstate commerce clause of the Federal constitution.

William A. Wright, who was and is the Comptroller-General of Georgia, demanded that Christie as the agent of said company pay said license and occupation tax for 1919 of $600, or be subject to prosecution for a misdemeanor for failure so to do and doing business without registering and paying said tax. In order to avoid trouble payment was made of said amount under protest. The exaction of the $600 by the defendant was without legal authority, as said tax act as applied to said Christie or said company is unconstitutional, null and void. " This suit is accordingly brought for the recovery of said six hundred ($600) dollars of and from the defendant, which, with . . interest thereon from April 25, 1919, at the legal rate, constitutes the damages which plaintiffs are entitled to recover herein from the defendant." Attached to the petition was a letter from the Dennison Manufacturing Company and Christie to the Comptroller-General of Georgia, enclosing a check of the company for $600 to pay said occupation tax. This letter recites that " The payment of this tax is made only by virtue of the demand made by your office that this tax must be paid either by said agent or by this company, and is made under protest," because neither the company nor said agent is liable therefor, as they are engaged solely in the transaction of interstate commerce in this State.

To this petition the defendant demurred on the ground, among others, that no cause of action is set out therein. The court sustained that ground of demurrer, and dismissed the petition. To this judgment the plaintiffs excepted.

*Smith, Hammond & Smith,* for plaintiffs.

*George M. Napier, attorney-general,* and *Seward M. Smith, assistant attorney-general,* for defendant.

HINES, J. (After stating the foregoing facts.)

1. It is urged by the Attorney-General, that this action is against the Comptroller-General of the State in his official capacity, to enforce a liability against the State, and is for this reason, in effect, one against the State, which can not be maintained without its consent. We do not construe this action as one brought against the defendant in his official capacity, but as an action against him individually for an act which, while done in his official capacity, was wholly without lawful authority, and beyond the scope of his official power. *Hamby* v. *Ga. Iron Co.,* 127 *Ga.* 792 (2) (56 S. E.

1033). The use of the language, " who is Comptroller-General of the State of Georgia," after the name of the defendant in the petition, is descriptio personæ solely; and otherwise has no legal significance. *Stewart* v. *Atlanta Beef Co., 93 Ga.* 12 (18 S. E. 981). In *Printup* v. *Cherokee Railroad Co., 45 Ga.* 365, the State had seized a railroad and placed the same in the possession and control of Printup as agent of the State. The railroad company filed a bill against Printup and others, seeking to marshal its assets, and to take this railroad from the possession of the agent of the State and place the same in the hands of a receiver. This court held that " If the State was in possession, it is not in the power of the judiciary to oust her, since the State, as such, can not be impleaded in her own courts except by express consent of the proper authorities." In that case the suit was in effect one against the State, and not against its agent in his individual capacity. Here the suit is against the official in his individual capacity, and is not aimed at the State.

2. It is next urged, that the payment of this tax was voluntarily made by the plaintiffs; and that for this reason it can not be recovered. It is unquestionably true, that in case of the payment of an illegal tax, the same can not be recovered back, " unless made under an urgent and immediate necessity therefor, or to release person or property from detention, or to prevent an immediate seizure of person or property. Filing a protest at the time of payment does not change the rule." Civil Code (1910), § 4317; *First Nat. Bank* v. *Americus,* 68 *Ga.* 119 (45 Am. R. 476); *Hoke* v. *Atlanta,* 107 *Ga.* 416 (33 S. E. 412); Wabaunsee County v. Walker, 8 Kan. 431; Union Pacific R. Co. v. Dodge Co., 98 U. S. 541 (25 L. ed. 196). In *Hoke* v. *Atlanta,* supra, this court recognized the difference between the payment of an illegal tax, when no mode of collecting the tax was provided except an ordinary proceeding at law or in equity, and such payment when failure to pay subjects the taxpayer to prosecution and punishment. In the former case a payment would be voluntary, though made under protest. In the latter case, when made to prevent prosecution and under protest, the payment would not be voluntary. The petition alleges, that the defendant, as Comptroller-General, demanded that Christie, as agent of this company, pay said occupation tax for 1919 of $600, or be subject to prosecution for a misdemeanor

for failure to do so; and that to avoid trouble the payment of this tax was made. The demurrer admits these facts, and they are to be taken to be true. The general tax act requires the agent or representative of any foreign corporation to register and pay the occupation tax therein imposed, and his failure to do so subjects him to prosecution for a misdemeanor. Acts 1918, p. 43. Under these facts, we can not say that the payment of this tax was voluntary.

3. This brings us to the consideration of the question whether the exaction of this tax was in violation of the interstate-commerce clause of the constitution of the United States. The general tax act of 1918 (Acts 1918, pp. 43, 53) imposes an occupation tax "Upon every agent or representative of any foreign or nonresident corporation, said agent or representative having a place of business or office in this State." If the plaintiff and its agent were engaged solely in conducting an interstate business, and were not engaged in doing any intrastate business, would the exaction of this tax violate the interstate-commerce clause of the Federal constitution? A corporation of one State may go into another, without obtaining the leave or license of the latter, for all the legitimate purposes of such commerce; and any statute of the latter State which obstructs or lays a burden on the exercise of this privilege is void under the commerce clause. Crutcher v. Kentucky, 141 U. S. 47 (11 Sup. Ct. 851, 35 L. ed. 649); Western Union Telegraph Co. v. Kansas, 216 U. S. 1 (30 Sup. Ct. 190, 54 L. ed. 355); International Textbook Co. v. Pigg, 217 U. S. 91 (30 Sup. Ct. 481, 54 L. ed. 678, 27 L. R. A. (N. S.) 493, 18 Ann Cas. 1103); Sioux Remedy Co. v. Cope, 235 U. S. 197 (35 Sup. Ct. 57, 59 L. ed. 193); Dahnke-Walker Milling Co. v. Bondurant, 257 U. S. 282, 291 (42 Sup. Ct. 106, 66 L. ed. 239). A statute may be invalid as applied to one state of facts, and yet valid as applied to another. Poindexter v. Greenhow, 114 U. S. 270 (5 Sup. Ct. 903, 29 L. ed. 185); St. Louis &c. R. Co. v. Wynne, 224 U. S. 354 (32 Sup. Ct. 493, 56 L. ed. 799, 42 L. R. A. (N. S.) 102); Kansas City Southern R. Co. v. Anderson, 233 U. S. 325 (34 Sup. Ct. 599, 58 L. ed. 983); Dahnke-Walker Milling Co. v. Bondurant, supra. Likewise a constitutional law may be unconstitutionally administered. If the purpose of the legislature by this act was to impose an occupation tax upon a foreign

corporation engaged solely in interstate commerce, it would be void because in violation of the interstate-commerce provision of the constitution; and the exaction of an occupation tax thereunder from such corporation would be illegal. If the purpose of the act was to impose an occupation tax only on agents and representatives of foreign corporations engaged in intrastate business, or in intrastate and interstate business, then the exaction of this occupation tax from the plaintiffs who were engaged solely in interstate commerce would be void because imposed without authority of law. Where a foreign corporation rents and maintains a local office with a stock of samples and a force of office employees and traveling salesmen, merely to obtain orders locally and in other States, subject to approval by its home office, for its goods to be shipped directly to the customers from its home State, this business arrangement is part of its interstate commerce, and not subject to local excise taxation. Cheney Co. *v.* Massachusetts, 246 U. S. 147 (38 Sup. Ct. 295, 62 L. ed. 632). Under the allegations of the petition in this case, the plaintiffs were engaged exclusively in interstate commerce. *City of Atlanta* v. *York Mfg. Co.,* 155 *Ga.* 33 (116 S. E. 195). The plaintiff rented and maintained an office in the City of Atlanta as an incident to and means of conducting said business, and does not do any intrastate business from said office. This being so, its resident agent or representative in charge of such office was not subject to the occupation tax demanded and collected by the Comptroller-General from the company and its agent for 1919.

4. Was the Comptroller-General individually liable to the plaintiffs for the exaction and collection of this occupation tax? We have seen that under the facts of this case this tax was illegal. If it was not the purpose of the legislature to impose an occupation tax upon the agents or representatives of a foreign corporation engaged exclusively in interstate business, then the Comptroller-General would be individually liable, under the ruling in *Stewart* v. *Atlanta Beef Co.,* supra. If the purpose of the legislature in enacting the general tax act of 1919 was to impose this tax upon the agents or representatives of the foreign corporation, although the latter was engaged solely in interstate commerce, then such act, so far as applicable to such foreign corporation, would be unconstitutional and void. Would the Comptroller-General in that case

be exempt from liability on the ground that he demanded and collected this tax under such unconstitutional statute? This is the vital question in the case. An unconstitutional statute, though having the form, features, and name of law, is in reality no law. It is wholly void. In legal contemplation it is as inoperative as if it had never been passed. It has been declared that it is a misnomer to call such statute a law. Such a statute confers no authority upon any one, and affords protection to no one. Norton v. Shelby County, 118 U. S. 425 (6 Sup. Ct. 1121, 30 L. ed. 178); Ex Parte Siebold, 100 U. S. 371, 376 (25 L. ed. 717); Board of Commissioners v. City of Bloomington, 253 Ill. 164 (97 N. E. 280, Ann. Cas. 1913A, 471); Bonnett v. Vallier, 136 Wis. 193, 116 N. W. 885, 17 L. R. A. (N. S.) 486, 128 Am. St. R. 1061); Felix v. Commissioners, 62 Kan. 832 (62 Pac. 667, 84 Am. St. R. 424); State v. Tufly, 20 Nev. 427 (22 Pac. 1054, 19 Am. St. R. 374); Adsit v. Osmun, 84 Mich. 420 (48 N. W. 31, 11 L. R. A. 534); McCants v. Layfield, 149 Ga. 238 (99 S. E. 877).

In Osborn v. Bank of the United States, 9 Wheat. 738 (6 L. ed. 204), Chief Justice Marshall declared that " it is an extravagant proposition that a void act can afford protection to the person who executes it." In Boston v. Cummins, 16 Ga. 102, 106 (60 Am. D. 717), this court declared that " The unconstitutional acts of the legislature, State and Federal, are not laws; and no court will execute them, having a proper sense of its own obligations and responsibilities." In Wellborn v. Estes, 70 Ga. 390 this court said: " Legislative acts in violation of the constitution of this State or of the United States are void." The constitution of this State declares that " Legislative acts in violation of this constitution or the constitution of the United States are void, and the judiciary shall so declare them." Proceedings under an unconstitutional statute had before such statute is judicially declared to be unconstitutional are void. Jordan v. Franklin, 131 Ga. 487 (52 S. E 673); Worth County v. Crisp County, 139 Ga. 117 (3) (76 S. E 747); James v. Blakely, 143 Ga. 117 (84 S. E. 431).

So the Comptroller-General will not be protected from individual liability under this general tax act, if it in fact imposes an occupation tax upon the plaintiffs, for the reason that such act is unconstitutional so far as the plaintiffs are concerned. As an unconstitutional act confers no authority upon an officer, his acts

thereunder are the same as if no statute on the subject existed. He is as much without authority to enforce a tax levy under an unconstitutional statute as he would be to levy and collect such tax in the absence of any statute. This being so, under the ruling in *Stewart* v. *Atlanta Beef Co.,* supra, the Comptroller-General is individually liable, under the facts stated in the petition of the plaintiffs, for the exaction and collection of this tax from them. The ruling in that case seems to be in harmony with the general rule that a person aggrieved by the wrongful enforcement against his person or property of a tax illegally levied and collected under compulsion of a statute which makes failure to pay it an indictable offense, and for which tax he is not liable, may maintain an action for damages against the tax-collector, according to the local practice and the circumstances of the particular case, in the form of trover or trespass, or, where he has been placed under arrest, assault and false imprisonment. Coulson *v.* Harris, 43 Miss. 751; Tuttle *v.* Everett, 51 Miss. 27 (24 Am. R. 622) ; 37 Cyc. 1278, X, D, 3, a. We recognize that this rule may operate harshly in some cases before the statute has been judicially declared unconstitutional, as where a justice of the peace is liable in damages if a person is arrested on his warrant issued under an unconstitutional statute (Kelly *v.* Bemis, 4 Gray (Mass.), 83 (64 Am. D. 50), and similar cases) ; but where payment of the illegal tax is made under compulsion and protest, the Comptroller-General is put upon notice that the taxpayer may bring assumpsit against him to recover the money paid, or damages for the illegal and wrongful exaction of the tax. If the officer pays the money into the State treasury after such protest, he does it with notice that he may be sued in respect thereto; and such payment will not shield him against suit. Elliott *v.* Swartwout, 10 Peters, 137 (9 L. ed. 373) ; Rushton *v.* Burke, 6 Dak. 478 (43 N. W. 815) ; Hearsey *v.* Pruyn, 7 Johns. 179.

Besides, should there be any recovery against the defendant, the legislature should, and doubless will, reimburse the defendant, as the State has received the money raised by the exaction of this tax.

The court below erred in sustaining the demurrer to the petition on the ground that it set forth no cause of action.

*Judgment reversed. All the Justices concur.*