## THARPE *et al. vs.* HARDISON.

1. While at a county election to determine the question of " fence " or " no fence," all qualified voters therein are entitled to vote, yet the power to cause such election to be held, or to prevent it, is exclusively in the freeholders ; and on a contest of such election, they alone are proper parties. One not a freeholder has no power to contest such election.

2. Will *certiorari* lie to the decision of the ordinary on a contest of such election; or is not such decision final ? *Quaere.*

October 24, 1882.

*Certiorari.* Fence Laws. Voters. Parties. Actions. Ordinary. Elections. Before Judge SIMMONS. Houston Superior Court. April Term, 1882.

To the report contained in the decision, it is only necessary to add that it nowhere appeared that defendant in error was a freeholder. It appeared that he was a justice of the peace, and one of the election managers. Tharpe was among the petitioners for election, but the notice of contest was directed to Tharpe *et al.* It does not appear that all the petitioners were made parties, nor on which side Tharpe voted.

W. L. GRICE ; DUNCAN & MILLER ; H. M. & B. N. HOLTZCLAW ; WINSLOW & COLLIER, for plaintiffs in error.

W. S. WALLACE ; C. M. DuPREE ; JOHN P. FORT, for defendant.

CRAWFORD, Justice.

Upon the petition of B. F. Tharpe, and fifty-four other freeholders of Houston county, an election was ordered by the ordinary, in which the question of " fence " or " no fence " was submitted to the lawful voters of that county.

On the day after the election, the managers, from all

the precincts except two, met at the court-house to consolidate the returns.

This they did, and, after rejecting those which had been sent up from some of the precincts, which were considered illegal, they certified to the ordinary that the true result of the election was a majority of 295 for " no fence." To this certificate of the returns of the election to the ordinary, A. J. Hardison, J. M. Culpeper, J. E. Rushing and W. S. Scattergood, filed papers contesting the same.

The notice of the contest was directed to " B. F. Tharpe and others," and a day named by the ordinary for the hearing thereof.

At the hearing, " Tharpe and others" denied that they were proper parties to the contest, and all the contestants, except A. J. Hardison, by permission of the ordinary, withdrew their names, and the subsequent proceedings were carried on in the name of Hardison alone on one side, and B. F. Tharpe *et al.* on the other.

The ordinary was of the opinion that the answer of Tharpe and others was insufficient to discharge them, and proceeded to hear evidence and determine the cause.

After counting some votes which had been rejected by the consolidating board, he declared that a majority of the votes had been cast for " no fence."

When the result had been declared, and published by the ordinary, a *certiorari in forma pauperis* was sued out by contestant, Hardison, and when the same came on to be heard in the superior court, Tharpe *et al.* moved to dismiss it, among others, upon the following grounds: want of jurisdiction; want of proper parties, plaintiffs and defendants; and because *certiorari* would not lie in such a case.

The motion to dismiss was overruled by the court; the *certiorari* sustained; the case remanded to the ordinary with directions to count the rejected votes, and take such other proceedings as the law required.

That decision makes the question for our adjudication.

The election over which this contest arises is authorized by special act of the general assembly, and is to be governed by its provisions. In that act, it will be seen, that before the ordinary is clothed with any power whatever to order an election, fifty freeholders must unite in a petition to him for that purpose; and to arrest it, a counter petition of an equal number of freeholders must be presented to him. The petition thus arrested, if supported by twenty-five additional freeholders, will require the ordinary to direct that the election be held. Thus it will be seen that the only parties who are authorized to move in this matter, or to prevent an action therein, are the freeholders of the county. Whilst at the election to be held, all the lawful voters of the county are authorized to vote, yet the parties who may procure or defeat the exercise of this right are the freeholders only.

It appears to us, therefore, that where it is provided that no one but a freeholder can be heard to ask for, and obtain, or oppose, and defeat the election ; that the legislative intent was to make them the only parties to inaugurate such a proceeding, and to test the sense of the voters on the question. That being so, and no other provision being made by the act for the general voter, except to exercise that right, we do not see how one not a freeholder may become a party, at any stage of the proceeding, and contest the legal process of the action of the ordinary.

Upon the question of whether the writ of *certiorari* lies in this case, it is to be remembered that the ordinary possesses power which he exercises as a *quasi* corporation, and is contradistinguished from his power as a court. Code, §338.

In this section, after the enumeration of several specific powers, he is to exercise. such others as are granted by law, or are indispensable to his jurisdiction.

By the special act authorizing this election, the ordinary —not the court of ordinary, but the ordinary as an officer

exercising the powers of this *quasi* corporation, upon proper petition, is to direct the holding of the election. Suppose, however, that after such petition, he should decide against the application, and refuse to order the election, would it be claimed that the remedy of the petitioners would be by *certiorari ?* We imagine not.

The returns of the election, like the petition for ordering it, must be made to him, and after examining them, and deciding the questions arising out of the same, he is to proclaim the result by public notice. But suppose that, in this examination, he should refuse to count the votes from certain precincts, or that, after they are counted, he should refuse to make proclamation of the results, does it appear that, in such a condition of things, the remedy would be by *certiorari ?* It would seem not. And whilst we do not mean to say that the writ of *certiorari* would not lie, or that the parties authorized to move in the premises would be remediless, yet we do say that we have the gravest possible doubts as to whether the remedy resorted to in this case is authorized by law, even if it had been brought by the proper parties. Moreover, as the legislature made no provision in the act for a review of the decision of the ordinary, we are rather inclined to the opinion that it was their intention that the same should be final and conclusive.

Judgment reversed.