## E. B. CLARK v. THE BOARD OF COMMISSIONERS OF MONTGOMERY COUNTY.

1. INTENTION OF VOTER, *to be Made Effectual.*   The intention of an elector is to be ascertained from the language of his ballot, read in the light of the circumstances of a public nature, surrounding the election at which it is cast; and though his will is not expressed with precision, yet if it is fairly apparent, and can be determined beyond a reasonable doubt, it should be made effectual.

2. WILL OF ELECTORS, *Apparent; Ballots to be Counted.* At a general election in M. county, an order was made by the board of county commissioners, submitting to the electors of that county a proposition to vote bonds, and prescribing that those voting in favor of the proposition should have written or printed on their ballots the words "For the bonds," and those voting against the proposition should have written or printed on their ballots the words "Against the bonds." On some of the ballots cast there were, first, the names of candidates for national, state and county officers, and at the bottom thereof there were printed the words "For the bonds." A pencil-mark had been drawn through these words, and immediately underneath was written in pencil the word "Against." *Held,* Under the facts in the case, that the will of the electors in casting these ballots is fairly apparent, and that they should be counted as votes against the proposition.

### *Error from Montgomery District Court.*

PROCEEDING by *E. B. Clark,* an elector of Montgomery county, for a temporary injunction to restrain the county board of said county from issuing certain bonds. November 29, 1884, Hon. Geo. Chandler, judge of the district court, refused to issue the injunction. This refusal Clark assigns as error, and brings the case here. The facts appear in the opinion.

*Kirkpatrick & Vestal,* for plaintiff in error.

*Dunkin & Chandler,* and *J. D. McCue,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: At an election held on November 4, 1884, the electors of Montgomery county voted upon a proposition to issue fifty thousand dollars in the bonds of that county, to be used in the building of a court house and jail. When the vote was canvassed the board of canvassers found that there had been 2,683 votes cast in favor of the proposition, and 2,652 against it, and accordingly declared that the proposition had been adopted. E. B. Clark, who is an elector of that county, for the purpose of contesting that election instituted this proceeding, and upon his verified petition and affidavits, applied to the judge of the district court for a temporary injunction

restraining the board of county commissioners from issuing the bonds declared by them to have been voted. The application was refused, and the plaintiff assigns the refusal as error. The controversy in this case arises over 76 ballots cast in two election precincts, which the plaintiff claims should have been counted against the proposition, but which the election boards refused to count, because of their informality.

It will be noticed that the vote was taken upon the day of the general election. The ballots rejected by the election boards had printed thereon and at the bottom of the ballots and underneath the names of the candidates for national, state and county officers, the words "For the bonds." A pencil-line had been drawn through these words, and immediately beneath the words so marked was written in pencil the word "Against." The order of the board of county commissioners submitting the question to the electors of the county, provided that all those voting in favor of the proposition should have written or printed on their ballots the words "For the bonds," and those voting against the proposition should have written or printed on their ballots the words "Against the bonds." If the rejected ballots had been counted as negative votes, the proposition was defeated by a majority of forty-five votes.

On the hearing before the district judge it was agreed that the only question to be decided was, whether the ballots which were cast as above stated should be counted against the proposition; and this is the question submitted to us. The leading consideration, and the one on which the decision of the case must turn, is, what was the will of the electors casting these ballots? In determining the intention of voters, election boards as well as courts should be guided by the language of the ballots cast, interpreted in the light of the circumstances surrounding the election. If the terms used by the voter upon his ballot are so vague and uncertain as not to disclose his purpose, it should be rejected; but on the other hand, if the terms employed by him on his ballot, though not technically accurate, are such as to make known his will beyond a reasonable doubt, effect must be given to it. ( *The State, ex rel.,*

*v. Metzger*, 26 Kas. 395, and cases cited; McCrary on Elections, ch. 7.)

It is conceded by counsel not to be imperative that an elector, in voting upon the proposition to vote bonds, should use the exact language prescribed in the order submitting the proposition; and that any words of similar import, and which will show with a reasonable degree of certainty the intention of the voter, will be sufficient. The act of the elector in drawing a pencil-mark through the printed words which would make it an affirmative vote, clearly shows that his attention was specially called to the proposition, and that he had under advisement the question of whether he should favor or oppose it. It also shows, beyond question, that he did not desire that his vote should be recorded in favor of the bonds. After he had thus expressed his purpose not to favor the bonds, while he had the subject under consideration, he writes, presumably at the same time, and with the same pencil, and immediately underneath the canceled words, the word "Against." The word used was the controlling one in the form prescribed by the order of the board of county commissioners to express opposition to the voting of the bonds, and in its ordinary signification means opposition. Opposition to what? Obviously it did not refer to the candidates whose names appeared on the upper part of the ticket: in that connection it would be meaningless. The action of the voter, in writing the word "Against," was not only directly associated with his act in penciling the words relating to the bond proposition, but it was directly and closely connected with them upon the ticket.

In view of these considerations, we cannot escape the conviction that the ballots were intended as negative votes upon the proposition. Common observation shows that this is the method usually adopted by voters in scratching a printed ticket. When a voter finds upon a ticket presented to him the name of a candidate to whom he is opposed, it is usual to cancel such name by a pencil-mark and write immediately under or near to the name canceled the name of the candidate for whom he desires to vote. Here the words to be used in

expressing the elector's concurrence or dissent to the proposition were "For" and "Against"; and we think there can be no reasonable doubt that it was the intention of the voter to only scratch and cancel that which would make it an affirmative vote, and adopting the usual method in scratching a ticket, he wrote in close proximity, and in connection therewith, the word "Against," and thereby it seems to us expressed his dissent to the subject in his mind, namely, the voting of the bonds.

We acknowledge the force of the defendant's argument, and recognize that this is a "border" case; but under the facts in the record, we think the will of the electors who cast the disputed ballots is fairly apparent, and that they intended to vote against the bond proposition.

From the views herein expressed, it follows that the order and judgment of the district court must be reversed.

All the Justices concurring.