· DuPRE *et al. v.* COTTON *et al.*

1.  Where, in an election for the submission of a proposition to the voters of a certain locality, forms of ballot are prescribed by the legislative enactment providing for the submission, a ballot cast therein, which is in substantial accord with the statutory form and which clearly expresses the intention of the voter in relation to the proposition voted on, will not be rejected or disregarded because it is not in the exact statutory words.

'(*a*)  Where an election is held in a certain school district for the purpose of permitting the electors to vote for or against local taxation for

public schools under the provisions of the act of 1906 (Acts 1906, p. 61), which declares that those favoring local taxation shall vote "for local taxation for public schools" and those opposed to local taxation shall vote "against local taxation for public schools," ballots cast by qualified voters having printed or written thereon "against local taxation for schools' (omitting the word "public") clearly express the intention of the voter to vote "against local taxation for public schools," and should be counted as such in the consolidation of the result.

(b) Counting the votes that were illegally disregarded by the managers of the election, less than two thirds voted in favor of local taxation for public schools, and no tax was authorized to be levied by such election.

2. The complaining residents and taxpayers were not in laches nor estopped by any conduct which would have the effect to prevent them from enjoining the collection of an illegal tax.

APRIL 13, 1910.

Petition for injunction.   Before Judge Fite.   Cobb superior court.   October 25, 1909.

*J. J. Northcutt* and *Clay & Morris,* for plaintiffs.

*Gober & Griffin, John Awtry,* and *William Attaway,* for defendants.

EVANS, P. J.   On March 2, 1909, an election was held in Powder Springs school district of Cobb county, under and by virtue of the provisions of the 4th section of the act approved August 21, 1906 (Acts 1906, p. 61), to determine whether a local tax for the support of the public schools of that district should be levied.   The election managers made their return to the ordinary, who passed the following order:   "Georgia, Cobb County.   It appearing from the within duly certified returns of an election held in the Powder Springs school district, held on March 2, 1909, in which the question of local taxation for public schools was submitted to the voters of said district, and it appearing from said returns that the following was the vote cast:   'For local taxation for public schools, 54,' 'against local taxation for public schools 20;' it further appearing that said vote cast is more than two-thirds majority of the votes cast, it is therefore declared by me, by virtue of the power conferred by the statute, that 'for local taxation for public schools' has carried with all its rights and privileges."   On September 7, 1909, H. A. DuPre and 16 others, alleging themselves to be citizens, taxpayers, and legally qualified voters of Powder Springs school district of Cobb county, in behalf of themselves and such others as occupy a similar position, filed their petition against the election managers, the trustees of the board of education of the

Powder Springs school district, the county school commissioner, the ordinary, the commissioners of roads and revenues, and the tax collector of Cobb county, praying an injunction against the collection of the local tax imposed by the board of trustees of Powder Springs school district by virtue of the election held on March 2, 1909, and a decree declaring void and of no effect the election held to authorize the imposition of the tax. The grounds of the alleged illegality of the election were, that 93 voters participated in the election, 37 of whom voted against local taxation for public schools and less than two thirds of those voting at the election voted for local taxation for public schools; and that of the 37 ballots cast against local taxation for public schools the managers erroneously refused to count 17 because of certain irregularities. The defendants were cited to show cause why an interlocutory injunction should not issue. At the interlocutory hearing it appeared from the voters' list that 93 persons voted in the election, and from the tally-sheet that the vote was as follows: "For local taxation for public schools 54." "For local taxation for schools 1." "Against local taxation for public schools 20." "Against local taxation for schools 10." "Against local taxation 3." "Against taxation 4." After considering this and other evidence, the court dissolved the restraining order theretofore granted, and refused the interlocutory injunction; and the plaintiffs excepted.

1. The petition is projected on the theory that the plaintiffs are citizens and taxpayers of the local school district, and that the defendants are attempting to collect a tax illegally levied upon their property; and its prayer is to enjoin the collection of the tax and to declare void the result of the election as a cloud upon their title. *Coleman* v. *Board of Education,* 131 *Ga.* 643 (63 S. E. 41). The specific illegality pointed out in the election is that the authority to levy the local tax for public schools, as authorized by the act of 1906, depended upon the result of an election wherein two thirds of those voting were favorable to the proposal to levy a local tax for public schools; and that two thirds of the voters did not vote in favor of the levy of such tax. The 4th section of the act of 1906 (Acts 1906, p. 61) declares that "The election [to authorize the tax] shall be held at a time and place prescribed by the proper authorities, and under rules governing ordinary special elections. Those favoring local taxation for public schools shall

vote 'For local taxation for public schools.' Those opposed shall vote 'Against local taxation for public schools.' The return of said election shall be made to the ordinary of the county, who shall declare the result, and two thirds of those voting shall be necessary to carry the election for local taxation for public schools." There was no evidence submitted to the judge tending to show fraud in the conduct of the election, and the whole case turns upon the question as to whether the managers of the election were justified in refusing to count all ballots except the 54 which were cast "for local taxation for public schools" and the 20 which were cast "against local taxation for public schools."

If the legislature prescribes a specific form of ballot and declares that no ballots except those in the prescribed form shall be counted, such enactment would be mandatory in character, and no ballot nullified by the legislature could be counted. Where, however, the General Assembly provides a referendum vote as a condition precedent to the levy of a local tax, and simply prescribes a form of ballot to be voted therein, the ballot will not be rejected because of a slight departure from the phraseology of the form, if it be clear from the ballot that the voter's intention with respect to the question submitted is clearly indicated. Running all through the act of 1906 is the legislative purpose to consult the wishes of the voters to be affected by the tax, and to authorize a levy of the tax only when two thirds of those voting shall be favorable to the same. The designation of the form of the ballot was to facilitate the legislative design, and to prevent possible complications arising out of the variety of modes of expression of the voters upon the subject. The ballot formulated is to be construed like any other writing, according to its plain meaning. A construction of the ballot which would deprive the voter of his vote will not be adopted where his ballot is equally susceptible of another construction which would give effect to his vote. The voter should not be disfranchised because of a slight departure from the phraseology of the legislative form, where the ballot expressed clearly his intent with respect to his position upon the question submitted at the election. The courts have uniformly applied these principles in appropriate cases. In North Carolina an act of the General Assembly upon the question of the issue of bonds in aid of a railroad required that those in favor thereof should vote "Subscription" and those opposed "No sub-

scription;" and it was held that the ballots of electors "For sub-scription" and "Against subscription" were legal ballots.   Clay-brook *v.* Commissioners, 114 N. C. 453 (19 S. E. 593).   Where in an election for trustees of common schools the ballots were headed for "trustees of public schools" instead of "common schools," as the office was called in the statute, it was held that the intention of the voter was fully manifested, and the ballots were counted.   Crimmins *v.* McManus, 34 Barb. 620.   The office named in the statute was "police justice," and the ballots were "for police magistrate;" it was held that. votes cast under either des-ignation should be counted and returned in favor of the persons for whom they had been cast.   Akin *v.* Matteson, 17 Ill. 167.   In an Indiana case the statute prescribed that ballots used in voting upon the question of an appropriation by a county or township, to aid in the construction of a railroad, should contain the words "For the railroad appropriation," and at the election a large portion of the ballots cast and counted contained only the words "For the rail-road."   It was held that the variance between the ballot and the statute was a mere irregularity which did not invalidate the ballot. Detroit etc. Railroad Co. *v.* Bearss, 39 Ind. 598.   In Kansas a stat-ute providing for the submission of a proposal to vote bonds pre-scribed that those voting in favor of the proposal should have writ-ten or printed on their ballots the words "For the bonds," and those voting against the proposition should have written or printed on their ballots the words "Against the bonds."   On some of the ballots cast were, first, the names of candidates, national, state, and county, and at the bottom thereof were printed the words "For the bonds." A pencil mark had been drawn through these words and immedi-ately underneath was written in pencil the word "Against."   It was held that such ballots should be counted as votes against the proposition.   Clark *v.* Commissioners of Montgomery County, 33 Kan. 202 (6 Pac. 311, 52 Am. R. 526).   And in Iowa the prescribed form of ballot for the removal of a county seat was not strictly followed; and yet, as the intention of the voter was clearly mani-fested on his ballot, it was held that the ballot should not be re-jected, though technically inaccurate.   Hawes *v.* Miller, 56 Ia. 395 (9 N. W. 307).

We are inclined to think that all of these votes should have been counted by the managers; and if they had been counted, the

result would have been 55 in favor of local taxation for public schools and 37 against local taxation. But, at all events, we are clear that the ballots "Against local taxation for schools" unmistakably disclosed the voters' intention to vote against local taxation for "public" schools, and should have been included in the count. Likewise the solitary vote "For local taxation for schools" should have been included in the count "for local taxation for public schools." And if the managers had counted these ballots and rejected the other, the final result would have been 55 votes in favor of local taxation for public schools, and 30 votes against local taxation for public schools, and the proposal would have failed to receive two thirds of the votes. So that, whether the votes "Against local taxation" and "Against taxation," aggregating 7, should be included in the count, or rejected as absolutely void and of no avail, the proposition to authorize the levy of the local tax for public schools failed to receive the necessary two thirds majority to become effective.

2. It is said that the petitioners are estopped by their laches from enjoining the levy of the tax, upon the authority of *Irvin* v. *Gregory*, 86 *Ga.* 605 (13 S. E. 120). It was held in that case: "A majority of the complainants having voted in favor of the approval of the local school law now in question, and all of them having acquiesced in the result of the election until after a school was established and put into operation, the judge was warranted in denying an interlocutory injunction to restrain the collection of a tax authorized by the local law and levied thereunder for supporting the public-school system provided for by said law. Any infirmity in the law or in the election was as good cause for enjoining the establishment of the schools before the expense was incurred, as it would be for arresting the collection of revenue with which to defray the expenses." The principle there announced is not applicable here, because this case presents no features of estoppel or laches. The evidence before the judge did not disclose that any of the plaintiffs voted in favor of taxation, but, on the other hand, several of them protested against the legality of the election from the very first, and made known their objection to the authorities charged with the collection of the taxes. It appears that the board of trustees were uncertain as to the legality of the election, and the collection of the tax; for in the employment of the teacher

they entered into a written contract, in which it was stipulated that they agreed to employ the teacher for nine months at a stated salary, "if the local tax plan recently voted on is not defeated; and if said tax is defeated, he is to make a reasonable effort to secure his salary from usual source of tuitions; but in the event that he shall finally fail to secure a reasonable salary from any or all such sources, it shall be his privilege to resign." The record discloses that no expense has been incurred by the trustees on the faith of the election, and that a little bill of repairs to the schoolhouse, made after the election, was paid for by private subscription. The plaintiffs filed their petition to enjoin the collection of the tax, just six months after the election was held, and as soon as the tax claimed to have been authorized thereby was attempted to be collected of them. Under such circumstances it can not be said that by their laches or conduct they have estopped themselves from objecting to the exaction of an illegal tax.

*Judgment reversed. All the Justices concur.*