HOOVER *et al. v.* BROWN *et al.*

Nos. 12307, 12308, 12309, 12310.  JULY 1, 1938.
ADHERED TO ON REHEARING, JULY 15, 1938.

*N. F. Culpepper, G. C. Thompson, Hatchett & Hatchett,* and *Little, Powell, Reid & Goldstein,* for plaintiffs.

*J. R. Terrell, John J. Neely, George C. Kennedy,* and *R. A. McGraw,* for defendants.

BELL, Justice.  Before January 15, 1938, the municipal authority of the City of Manchester was vested in three citizens, known as the Board of Commissioners, two of whom would constitute a quorum.  Ga. L. 1923, p. 739, §§ 3 and 4.  See also Ga. L. 1933, p. 1033.  On January 15, 1938, the General Assembly passed an act purporting to amend the charter of the City of Manchester so as to increase the number of commissioners from three to seven. This act named the following additional commissioners: Edward L. Neely, A. J. Routon, A. H. NeSmith, and Mrs. Eugene Brown; and section 9 provided that four members should constitute a quorum.  It provided also that all conflicting laws "are hereby repealed, and this act shall become effective immediately upon its passage and approval by the Governor, any provisions of any law calling for a referendum to the contrary notwithstanding." Ga. L. Ex. Sess. 1937-1938, p. 1204.  The four commissioners specifically named in this statute immediately assumed office, and soon afterward T. A. Hoover and several others, as citizens and taxpayers of the municipality, instituted against each of them a separate action in the nature of an application for the writ of quo war-

ranto. In these actions the relators attacked the constitutionality of the act of January 15, 1938, purporting to amend the charter of the City of Manchester, upon the ground, among others, that it was a special law enacted in a case for which provision had been made by an existing general law; the specific contention as to this ground being that it sought as an amendment to substitute officers for municipal control other than those in control under the existing charter, without submission to the qualified voters of the municipality in accordance with the act of 1925 (Ga. L. 1925, p. 136), as amended by the act of 1927 (Ga. L. 1927, pp. 244, 245), now codified as § 69-101. By the terms of this section, as to cities having a population of less than 50,000 inhabitants, such a referendum is required as to any amendment of a charter which materially changes the form of government or seeks to substitute officers for municipal control other than those in control under the existing charter. The machinery for such election is provided by section 69-102. Pending these actions the General Assembly passed another act which purported to amend section 69-101, by adding a proviso that it should not apply to cities having a population of not less than 3600 nor more than 3800 according to the census of 1930, and to ratify and to declare of full force and effect any amendment to the charter of any such city, "heretofore enacted." This act was approved January 25, 1938. Ga. L. Ex. Sess. 1937-1938, p. 274. The relators also attacked this statute as unconstitutional for several reasons. One of the grounds of attack was similar to that made upon the act of January 15, 1938, namely, that it was a special law enacted in a case for which provision had been made by an existing general law. No issue of fact being presented, the case was tried before the judge without a jury. He entered an order denying the writ of quo warranto in each case, and the relators excepted. We thus have before us four writs of error, which may be decided as one case.

After the judgments had been rendered and the jurisdiction of the Supreme Court had attached, the General Assembly at the same session passed a third act, purporting to amend section 69-101 of the Code by providing, among other things, that it should not apply to cities having a population of not less than 3600 nor more than 3800 according to the census of 1930 "or any future census." This act was approved February 16, 1938. Ga.

L. Ex. Sess. 1937-1938, p. 272. Upon basis of this statute the defendants moved in this court to dismiss the writs of error, on the ground that its enactment had cured any possible defects in the acts of January 15 and January 25, 1938, and that the questions raised had become moot. The relators (plaintiffs) replied that this statute also is unconstitutional, for reasons stated. As indicated above, several attacks were made upon each one of the acts of 1938; but in the view which we take of the cases the foregoing is a sufficient statement of the questions raised by the plaintiffs as to the validity of these statutes. The contentions made by the defendants will be stated and dealt with in the following opinion.

■ Section 69-101 of the Code is as follows: "No local law seeking repeal of a municipal charter of a city of less than 50,000 inhabitants or an amendment to any municipal charter of a city of less than 50,000 inhabitants, which amendment materially changes the form of government of a municipality or seeks to substitute officers for municipal control other than those in control under the existing charter, shall become effective until such repeal or amendment shall be voted upon by the qualified voters of the municipality to be affected as hereinafter provided." One of the contentions of the defendants is that this is not a general law, but is a special law, and therefore that it could be amended by a special act, as the act of January 15, 1938, purporting to amend the charter of the City of Manchester. It is claimed that this section of the Code should be treated as a special law, because, as contended, there exists no reasonable basis for the classification therein made of municipalities. We can not agree to this contention. The classification is broad, in that as to cities having a population of less than 50,000 inhabitants the charters shall not be subject to repeal or amendment so as to change the form of government or to substitute officers for municipal control, without submission to the qualified voters; whereas no such referendum is required in municipalities having a population of 50,000 or more. In view of the stated objects of this legislation and the broad range of classification, it can not be said by this court that the classification is not based upon reasonable ground. *Stewart* v. *Anderson,* 140 *Ga.* 31 (78 S. E. 457) ; *Adams Motor Co.* v. *Cler,* 149 *Ga.* 818 (102 S. E. 440) ; *Cooper* v. *Rollins,* 152 *Ga.* 588 (110 S. E. 726) ; *Wright* v. *Hirsch,* 155 *Ga.* 229 (116 S. E. 795) ;

*Abbott* v. *Commissioners of Fulton County,* 160 *Ga.* 657 (129 S. E. 38). And see further, in this connection, *Murray* v. *Waycross,* 171 *Ga.* 484 (3) (156 S. E. 38) ; *City of Brunswick* v. *Trunnell,* 182 *Ga.* 489, 492 (185 S. E. 918).

It is further contended that section 69-101 expresses a mere rule of legislative procedure which was not, and could not be, controlling upon subsequent legislatures. Nor can we sustain this contention. This section embodies a general law by which the charters of municipalities within a specified class are so fixed that no repeal, and no amendment having either of the objects stated therein, shall become effective without submission to the qualified voters. This statute does not purport to bind future legislatures. Being a mere statute, it may be amended or repealed in a lawful manner by any subsequent legislature; although, being a *general statute,* it can not under the constitution be so amended or repealed except by another general law. The decision in *Mayor &c. of Americus* v. *Perry,* 114 *Ga.* 871, 877 (40 S. E. 1004, 57 L. R. A. 230), was rendered before the passage of this statute, and contains nothing contrary to what is ruled in the present case. Nor does the decision in *Orr* v. *James,* 159 *Ga.* 237 (6) (125 S. E. 468), support the contention that section 69-101 states a mere rule or policy of legislative procedure. That decision had reference to a provision in the Civil Code of 1910, § 486, to the effect that elections for a change of "county-site" shall not occur oftener than once in five years. The decision was expressly based on the ground that the power granted by the constitution to enact statutes removing county-sites "can not be limited by act of the legislature so as to bind subsequent legislatures." See Code, § 2-8205. It was said that *in this respect* one legislature can not bind another legislature. This is a very different question from that presented in the instant case.

█ The act of January 15, 1938, by which the number of commissioners was increased from three to seven, and the number necessary to constitute a quorum was changed from two to four, was an amendment to the charter of the City of Manchester, seeking "to substitute officers for municipal control other than those in control under the existing charter." The act provided that it would become effective without a referendum, although the City of Manchester had a population of less than 50,000 inhabitants and not-

withstanding there was in existence at the time a general law under which such an amendment should not become effective except on submission to the qualified voters. The act of January 15, 1938, is by its express terms a special law applicable only to the City of Manchester by name. If the act had added fewer commissioners than four, it might perhaps not have been susceptible of construction as seeking to substitute officers for municipal control; but since it more than doubled the number of commissioners and changed the quorum from two to four, it had the potential effect of taking the municipal control from the three commissioners then in office and vesting it in the four new commissioners who were added by the amendment. It thus amounted to a substitution of officers for municipal control, within the meaning and purpose of the law as contained in the Code, § 69-101. Under the terms of this act, the four new commissioners could within themselves constitute a quorum and would have the power to perform any governmental function within the charter, regardless of the vote or approval of the existing three commissioners; and since they were thus vested with potential control, it is immaterial whether they would ever choose to exercise the power conferred upon them. The charter amendment here under consideration is materially different from those involved in *Murray* v. *Waycross,* and *City of Brunswick* v. *Trunnell,* supra. It follows from what has been said that this statute is a special law enacted in a case for which provision had been made by the existing general law as contained in section 69-101. It is therefore unconstitutional and void, as contended by the relators. Code, § 2-401.

■ Under the rulings hereinbefore stated, judgments should have been rendered in favor of the relators, unless the invalidity of the act of January 15, 1938, was cured by the subsequent act of January 25, 1938. The latter act purported to be a general act amending the general law as contained in section 69-101, by providing that the terms of this section should not apply to any municipality having a population of not less than 3600 nor more than 3800 by the United States census of 1930. It also attempted as a general law to ratify and confirm any previous act amending the charter of any such city. This statute is unconstitutional and void, as contended by the relators, since it is clearly apparent that the narrow classification therein stated is not based upon any reason-

able ground, and therefore it is no more than a special law, seeking by its terms to amend a general law, contrary to constitutional inhibition. See *Mathis* v. *Jones,* 84 *Ga.* 804 (11 S. E. 1018); *Lorentz* v. *Alexander,* 87 *Ga.* 444 (13 S. E. 632); *Benning* v. *Smith,* 108 *Ga.* 259 (33 S. E. 823); *Mayor &c. of Danville* v. *Wilkinson County,* 166 *Ga.* 460 (143 S. E. 769); *Cain* v. *State,* 166 *Ga.* 539 (144 S. E. 6); *Toole* v. *Anderson,* 177 *Ga.* 814 (171 S. E. 714); *Butler* v. *Pape,* 183 *Ga.* 599 (3) (188 S. E. 890). The necessary conclusion is that the act of January 25, 1938, did not cure the invalidity of the earlier act, and judgments should have gone in favor of the relators.

■ Ordinarily a motion to dismiss a writ of error is the first matter for decision; but in this instance the motions to dismiss, depended upon principles involved in the cases themselves, and for this reason decision thereon has been reserved as the last matter for determination. After the rendition of the judgments under review and after jurisdiction of the cases had become vested in the Supreme Court, the General Assembly on February 16, 1938, passed a third act purporting again to amend section 69-101. So far as here material, the provisions of this amendment were the same as those contained in the act of January 25, 1938, except that after statement of population by the census of 1930 the words "or any future census" were added. The motions to dismiss the writs of error were based upon the asserted ground that the passage of the act of February 16, 1938, cured any possible defects in the two previous acts, rendering the judgments valid, and causing the questions raised by the relators in this court to become moot. The relators, who are the plaintiffs in error, replied by challenging this act upon grounds similar to those urged against the previous acts of January 15 and January 25. Under the principles ruled above, this act is likewise unconstitutional for the reason that it is based upon no reasonable classification, and is therefore only a special statute seeking by its terms to amend a general law. In view of the narrow classification stated therein, the addition of the words "or any future census" does not alter the case. *Gibson* v. *Hood,* 185 *Ga.* 426 (195 S. E. 444). It has often been held that this court will not pass upon the constitutionality of a statute unless the point was distinctly made and decided in the court below. In the circumstances of this case the plaintiffs had no op-

portunity in the court below to challenge the act of February 16, 1938; nor could the defendants have invoked it. Since it was not passed until after jurisdiction had been transferred from the trial court to the Supreme Court, and was invoked for the first time by the motions to dismiss the writs of error, the plaintiffs could reply by asserting its invalidity. See, in this connection, *Holliman* v. *State,* 175 *Ga.* 232 (165 S. E. 11); *Bowers* v. *Keller,* 185 *Ga.* 435 (195 S. E. 447); Saunders *v.* Shaw, 244 U. S. 317, 320 (37 Sup. Ct. 638, 61 L. ed. 1163); Ohio ex rel. Bryant *v.* Akron Metropolitan Park Dist., 281 U. S. 74 (50 Sup. Ct. 228, 74 L. ed. 710, 66 A. L. R. 1460); Brinkerhoff-Faris Trust &c. Co. *v.* Hill, 281 U. S. 673, 678 (50 Sup. Ct. 451, 74 L. ed. 1107); Missouri ex rel. Missouri Ins. Co. *v.* Gehner, 281 U. S. 313, 320 (50 Sup. Ct. 326, 74 L. ed. 870). There is no merit in the motions to dismiss. The judge erred in refusing to grant the writs of quo warranto as prayed by the relators.

*Judgments reversed. All the Justices concur.*

ATKINSON, P. J., concurs in the judgment.

#### ON REHEARING.

A joint motion for rehearing was filed by the defendants in error in these cases. Only two contentions were pressed in this motion. First, the movants urge again that the act of January 15, 1938, purporting to amend the charter of the City of Manchester, did not involve such a substitution of officers as to require a referendum on that ground, under the Code, § 69-101. As stated in the original opinion, this section was derived from the act of 1925 as amended by the act of 1927. Ga. L. 1925, p. 136; Ga. L. 1927, pp. 244, 245. The caption of the former act referred to "the naming of other municipal officers other than those holding under existing charters." It also contained the words "for other purposes." It did not include the words "for municipal control." Nor was the latter phrase contained in section 3, which, so far as here material, has been codified to read as follows: "This law shall in no event have reference to amendments, . . except such as seek . . the substitution of municipal officers other than those holding existing offices." Code, § 69-103. While the caption and all provisions of the act are to be considered in its interpretation, the omissions just noted would not warrant this court in construing section 1 as if the words "for municipal con-

trol" were also omitted from that section. It is declared therein that as to cities of a designated class any amendment to a charter which seeks to substitute other officers "for municipal control" shall not become effective until approved by the voters. Code, § 69-101. Other provisions manifestly refer to the *kind of amendment* described in this the principal section. Thus, considered as a whole, the statute plainly contemplates substitution of other officers "for municipal control," and can not be construed as applying only to legislating existing officers out of their positions and replacing them with others. On this question, we deem it unnecessary to add more to what was said in the original decision.

The second contention is that the act of January 15, 1938, purporting to amend the particular charter, should not have been declared unconstitutional as a whole, and that at most only section 11 should have been held invalid, with the remaining portions sustained as valid and to become effective on approval by the qualified voters. Accordingly, it is insisted that our decision should be so modified as to permit a referendum, or so as to apply section 69-102 in reference thereto. Counsel emphasize in this connection the provision of section 10, "that if any portion or section of this act be declared unconstitutional it shall not affect the remaining sections of this act, and the same shall remain in full force and effect." This provision can not change the result, in view of section 11. It was provided by that section that "this act shall become effective immediately upon its passage and approval by the Governor, any provisions of any law calling for a referendum to the contrary notwithstanding." It is plain from this language that the existing rule as to referendum was recognized or in mind in the enactment of this statute; and that instead of a mere failure to observe it, there was a positive intention that it should not be applied to this measure. In other words, it is apparent from this section that the legislature not only did not intend a referendum, but consciously intended exactly the contrary. It follows that an approval of the act by the voters would be utterly without force, because inconsistent with the intention of the lawmaking body.

In view of section 11, referring to the act as a whole and expressly excluding from the whole all right of referendum, section 10 can be taken to mean only that if any portion of the act considered as a *presently effective* statute should be declared uncon-

stitutional, this "shall not affect the remaining sections." It can not be construed as intending that the remainder shall yet stand, and be offered to the voters, if section 11 is declared invalid. This latter section could not likely have been finally adjudicated within the sixty-day period allowed by section 69-102, for the filing of a petition for such election. In the meantime any right of election would be left in doubt, as would also the validity of the acts of those who assumed office under the terms of such statute. An intention to create a situation so confusing and uncertain can not reasonably be attributed to the General Assembly. If a statute is in part constitutional and in part unconstitutional, and the objectionable portion is so inseparably connected with the general scheme, that, in the event it should be stricken, effect can not be given to the intention of the legislature, the result will be that the whole act fails, and no part of it can be considered as the law. *Bennett* v. *Wheatley,* 154 *Ga.* 591, 595 (115 S. E. 83). The provision *against* referendum here is so connected with the general scheme of the act that effect could not be given to the legislative intention with such provision stricken; and this is true notwithstanding the declaration contained in section 10. It is generally held that a saving clause of this character is only an aid to construction, and is not an absolute command. It merely creates a presumption in favor of separability, and does not authorize the court to give to the statute an effect altogether different from that sought by it when considered as a whole. It "in no way alters the rule that in order to hold one part of a statute unconstitutional and uphold another part as separable, they must not be mutually dependent upon each other." Carter *v.* Carter Coal Co., 298 U. S. 238 (56 Sup. Ct. 855, 80 L. ed. 1160, 1190). Upon the general question as to the effect of such clauses, see *Reynolds* v. *State,* 181 *Ga.* 547 (2) (182 S. E. 917) ; *Dorsey* v. *Clark,* 183 *Ga.* 304 (188 S. E. 338) ; *Cone* v. *State,* 184 *Ga.* 316 (191 S. E. 250) ; Dorchy *v.* Kansas, 264 U. S. 286 (44 Sup. Ct. 323, 68 L. ed. 686) ; Williams *v.* Standard Oil Co., 278 U. S. 235 (48 Sup. Ct. 115, 73 L. ed. 287, note) ; 59 C. J. 647, § 207; 11 Am. Jur. 846, § 156.

*Judgment adhered to on rehearing. All the Justices concur.*