23141, 23142.  STINSON et al. v. MANNING, Member of
Board of Education, et al.

ARGUED SEPTEMBER 15, 1965—DECIDED OCTOBER 11, 1965—
REHEARING DENIED NOVEMBER 4, 1965.

490

*Bloch, Hall, Groover & Hawkins, Denmark Groover, Jr.,*
*N. G. Reeves, Jr., Paul J. Jones, Jr.,* for plaintiffs in error.

*Arthur K. Bolton, Attorney General, Paul Rodgers, Assistant*
*Attorney General, William M. Towson, B. B. Hayes, Nelson &*
*Nelson, King & Spalding, Robert L. Steed,* contra.

QUILLIAN, Justice. Under the view we take of this case as presented by argument of counsel, there are three principal questions which must be answered.

(1) Did the petitioners have an adequate remedy at law under the Election Code of 1964, supra?

(2) If the petitioners did not have an adequate remedy at law and could seek equitable relief, did the petition set forth a cause for such relief?

(3) Did the petition affirmatively disclose the petitioners were guilty of laches so as to bar their right to the relief prayed?

In the following divisions of this opinion we shall treat the questions in the order here set out.

■ The defendants contend that the petitioners had an adequate remedy at law under the contest provisions of the Election Code of 1964 (Ga. L. 1964, Ex. Sess., pp. 26, 177; *Code Ann. Ch.* 34-17). The provision recites: "the approval or disapproval of any question submitted to electors at an election; may be contested by any person who was a candidate at such primary or election for such nomination or office, or by any five electors who were entitled to vote for such person or for

or against such question." Ga. L. 1964, Ex. Sess., pp. 26, 177 (*Code Ann.* § 34-1702). The word "question" under this provision is defined as "a brief statement of such constitutional amendment or other proposition as shall be submitted to a popular vote at any election." Ga. L. 1964, Ex. Sess., pp. 26, 28 (*Code Ann.* § 34-103 (z)). Among the grounds on which an election may be contested are "when illegal votes have been received or legal votes rejected at the polls sufficient to change or place in doubt the result." Ga. L. 1964, Ex. Sess., pp. 26, 178 (*Code Ann.* § 34-1703 (c)). Hence, without more the 1964 Act would be applicable and would appear to furnish an adequate remedy at law for the complaint here made.

However, the petitioners assail this provision as violative of Art. I, Sec. I, Pars. II and III of the Georgia Constitution (*Code Ann.* §§ 2-102, 2-103) in that the requirement that there be five electors to bring into question the adoption of a constitutional amendment deprives the petitioners of due process and their right to protection of person and property. Since an unconstitutional or void provision would not furnish an adequate remedy at law within the purview of the equitable maxim contained in *Code* § 37-120, we consider the attack made on this provision.

Counsel for the defendants have cited numerous examples of laws in other jurisdictions and even some prior Acts in Georgia where there were provisions requiring plural complainants in an election contest. *Tharpe v. Hardison,* 69 Ga. 280, 282; Ga. L. 1897, p. 87 (*Code* § 23-506). However, no authority is cited upholding the validity of such provisions when attacked on the constitutional basis here made.

Without deciding the validity of such requirement in a normal election contest, we pass only upon the issue of whether plural contestants may be required in order to challenge the ratification of a constitutional amendment. To pose the question is to answer it; for, clearly every citizen whose rights are affected by an invalid constitutional amendment may seek redress in our courts. To insure compliance with the amendatory processes of the Constitution in order that one act only under a validly amended constitution is a matter of vital concern to each indi-

vidual. We can not countenance a statute which silences the protesting voice of a single person merely because he is unable to persuade a certain number of his fellow citizens to join with him in challenging an abortive attempt to change the basic instrument of our government. Such a concept is inherently abhorrent to the fundamental tenets of a constitution which historically has upheld the rights of the individual.

We have not overlooked the severability clause of the 1964 Act, Ga. L. 1964, Ex. Sess., pp. 26, 219 (*Code Ann.* § 34-2003), nor the rule that: "where an Act can not be sustained as a whole, the courts will uphold it in part, when it is reasonably certain that to do so would correspond with the main intent and purpose which the legislature sought to accomplish by its enactment, if, after the unconstitutional part is stricken, there remains enough to accomplish that purpose. An Act can be pro tanto unconstitutional." *Moseley v. State,* 176 Ga. 889, 891 (169 SE 97). Nevertheless, under *Code Ann. Ch.* 34-17 the power to contest "the approval or disapproval of any question submitted to electors at an election" is inseparably interrelated with the requirement that it be contested "by any five electors who were entitled to vote . . . for or against such question." Hence, the right to contest and the requirement as to the number of contestants must stand or fall in toto, for we can not judicially ascertain what the legislature intended if the "five electors" prerequisite be stricken. *Hoover v. Brown,* 186 Ga. 519, 528 (198 SE 231).

*Code Ann. Ch.* 34-17, insofar as it pertains to constitutional amendments, is invalid, unconstitutional and void. It is thus apparent that the petitioners could not obtain relief under that law and were entitled to seek the intervention of equity.

■ The primary question for our consideration is whether the petition alleged facts showing that the constitutional amendment was invalid because it was not ratified "by a majority of the electors qualified to vote for members of the General Assembly voting thereon in each . . . political subdivision [directly affected]" as required by Art. XIII, Sec. I, Par. I (*Code Ann.* § 2-8101) of the Georgia Constitution.

Counsel for the defendants urge that *Styles v. Jones,* 217 Ga.

228 (121 SE2d 627), is controlling here and demands a finding in their favor. Although the premise is valid we can not agree with the conclusion reached. In the *Styles* case we considered the paramount command of the Constitution that an amendment which is not general must be passed by a majority of electors in the political subdivision affected, and in doing so we recognized the rule in *Crow v. Bryan,* 215 Ga. 661, 664 (113 SE2d 104): "that an election will be avoided when there is injected into it the insurmountable uncertainty incident to the rejection of the votes of electors in a sufficient number to overcome the apparent and announced result of the election, if they had all voted against the result reached . . ." Under *Styles* and the cases cited, a plaintiff might proceed under either of two theories: (1) an inclusion of illegal electors; (2) an exclusion of legal electors. However, in the *Styles* case the plaintiffs proceeded under neither theory and we held that it was not enough to allege there was insurmountable uncertainty as to the result without showing that enough votes were involved so that the results might have been changed. Thus, this court held, in effect, there was no showing that a majority of the electors in the political subdivision affected had not voted for ratification.

In the present case, as we construe the allegations of the petition, the petitioners are proceeding on the second theory, that votes of county electors were excluded from the County System vote total in two salient particulars. In the first instance, it is alleged that in excess of 500 votes in the Dublin Election District should have properly been included in the County System vote. In the second instance, it was alleged that more than 100 absentee ballots were excluded from the County System total by being improperly placed in the Independent System vote total. Since the alleged majority vote for the amendment in the County System was only 19, either one of these excluded groups would be sufficient to overcome the announced result. Under the rule of the *Bryan* case, 215 Ga. 661, supra, it is not requisite that the plaintiff allege how the included or excluded votes were cast, but only that there be a sufficient number to affect the result if all had voted one

494

way. Hence, on general demurrer we only require such specificity as will enable the court to determine if there was such sufficient number of excluded electors to overcome the announced result by creating an insurmountable uncertainty. Whether or not allegations of "in excess of 500" or "more than 100" would be sufficient against a special demurrer calling for specific enumeration of excluded voters need not be determined here.

In view of the ruling here made, the argument by the defendants that equity will not intervene to correct mere irregularities is not meritorious.

■ We now consider whether the petitioners were barred by laches. Both in oral argument before this court and in the brief of the defendants in error it is conceded by defendants' counsel that laches may not be asserted against those seeking to enjoin the effect of an unconstitutional law nor where legal votes have been illegally disregarded. See *DuPre v. Cotton,* 134 Ga. 316 (2) (67 SE 876). Since we hold that the allegations of the petition were sufficient to show that legal votes were disregarded in sufficient numbers to overcome the announced result so that the amendment was not ratified and hence void, the petitioners would not be barred by the doctrine of laches. See *Sellers v. Cox,* 127 Ga. 246, 255 (56 SE 284); *Burkhart v. City of Fitzgerald,* 137 Ga. 366 (5) (73 SE 583).

Moreover, here the constitutional amendment and the Act enacted pursuant thereto were not to be effective until July 1, 1965, while the petition was brought on June 2, 1965. Furthermore, while the petition shows that the petitioners knew of the adoption of the amendment, the passage of the Act and the holding of the election for members of the school board, there is nothing to show they were not diligent or failed to act promptly, once, as alleged in the petition, the new board of education "presumed to exercise the authority granted by [the 1965] Act." Under these circumstances, assuming the bar of laches could be applied in a case where one attacks a constitutional amendment as being a nullity, we find no basis to apply the doctrine here.

The trial judge erred in sustaining the demurrers of the

defendants attacking the petition on the grounds that the petitioners were barred by laches.

■ ■ Headnotes 4 and 5 require no elaboration.

*Judgment reversed. All the Justices concur, except Mobley, J., not participating for providential cause, and Cook, J., disqualified.*