## 33611. GEORGIA SOUTHERN & FLORIDA RAILWAY COMPANY v. ODOM et al.

MARSHALL, Justice.

This case involves the following ordinance of the City of Arabi, Georgia: "All trains must slow down to a speed not to exceed fifteen (15) miles per hour within the city limits of Arabi, or that a flagman be placed at each railroad crossing within these limits to be on duty to warn traffic of all oncoming trains."

The trial court ruled that § 95A-1014 of the Georgia Code of Public Transportation (Code Ann. § 95A-1014; Ga. L. 1973, pp. 947, 1118) provides the sole and exclusive method whereby a municipality may require traffic protection at a grade crossing.[1] Therefore, the trial court struck down the portion of the ordinance requiring flagmen to be placed at grade crossings, as in violation of

[1]Under Code Ann. § 95A-1014, a municipality may order the protection of a grade crossing by the installation of protective devices by the railroad. Representatives of the railroad, the municipality, and the Department of Transportation are required to meet and agree to a plan and specifications for the acquisition and installation of the protective devices. If no agreement is reached, the municipality may, if the department agrees, order the railroad to proceed with the acquisition and installation of protective devices, as indicated in its own plans and specifications. Provision is also made for the division of costs.

Art. I, Sec. II, Par. VII of the Constitution of Georgia of 1976 (Code Ann. § 2-207).[2]

The parties are in agreement that there is one issue for decision: Is the unconstitutional clause so interwoven into the entire scheme of the ordinance that striking it down requires the entire ordinance to be held bad, or is this clause severable from the remainder of the ordinance, so that even after the objectionable clause has been stricken the remainder of the ordinance may nonetheless stand?

The parties cite an abundance of cases which contain statements of the various and myriad rules of statutory construction. The parties staunchly contend that the respective cases cited by them demand a ruling in their favor. Actually, we believe that practically all of the cited cases provide only general rules of statutory construction ill-suited to decide the specific facts of this case. This is so because, as stated by the appellant, "[i]t is practically unprecedented for an ordinance or law to be phrased in the alternative. This alternative wording distinguishes this ordinance from most of the legislation involved in the Georgia separability cases . . . appellant has found no cases involving an ordinance couched in the alternative." Nor, may we add, has the appellee cited any such cases. Nor has our research divulged any.

The appellant suggests that cases dealing with statutory exceptions or provisos can be applied by analogy in deciding this case. We are persuaded that the appellant is correct in this regard because, as the appellant points out, the Arabi ordinance could just as easily have been worded, "All trains must slow to a speed not to exceed 15 miles per hour, except where a flagman is present" (exception), or "All trains must slow to a speed not to exceed 15 miles per hour, provided, however, this section shall not apply where a flagman is present" (proviso). In either case, the effect of the ordinance would be the same.

_____

[2]Code Ann. § 2-207 provides that "Laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law . . ."

In his treatise on statutory construction, Sutherland states that, "When an exception, exemption, proviso or any clause which limits the scope of an Act's applicability is found to be invalid, the entire Act may be void on the theory that by striking out the invalid exception the scope of the Act has been widened and therefore cannot properly represent the legislative intent . . ." Sutherland, Statutory Construction, Vol. 2, § 44.13 (4th Ed.). "If, by striking out a void exception, proviso or either restrictive clause the remainder, by reason of its generality, will have a broader scope as to subject or territory, its operation is not in accord with the legislative intent, and the whole would be affected and made void by the invalidity of such part." Sutherland, Statutory Construction, Vol. 1, § 306 (2d Ed.).

That is precisely the situation we have here. For, if the flagman provision of the ordinance is struck down and the 15-mile-per-hour-speed-limit provision is allowed to stand, the upshot would be that all trains would be required to slow down to a speed not in excess of 15 miles per hour, regardless of whether or not flagmen (or mechanical protective devices) were present at the grade crossings.

We are unable to judicially ascertain[3] whether the City of Arabi would have intended all trains to slow down to a speed of 15 miles per hour, if the city had known that it could not by municipal ordinance require flagmen to be posted at the grade crossings. For the city may have intended the 15-mile-per-hour-speed-limit provision merely as an inducement for the railroads to post flagmen.

In the order appealed from, the trial court ruled, on the appellees' pre-trial motions, that the speed-limit provision of the ordinance is valid and admissible in this

---

[3]*Stinson v. Manning*, 221 Ga. 487 (145 SE2d 541) (1965), applies as one of the many standards used in resolving severability questions, whether it can be "judicially ascertained" whether the legislature would have intended the remainder of a piece of legislation to stand if the invalid part was stricken.

wrongful-death action notwithstanding the fact that the flagman provision is invalid. The judgment must, therefore, be reversed.

*Judgment reversed. All the Justices concur, except Jordan, J., who concurs in the judgment only, and Nichols, C. J., and Hill, J., who dissent. Bowles, J., disqualified.*

ARGUED JUNE 13, 1978 — DECIDED SEPTEMBER 6, 1978 — REHEARING DENIED SEPTEMBER 26, 1978.

*Hall, Bloch, Garland & Meyer, F. Kennedy Hall, Mallon Faircloth,* for appellant.

*Bruce Benton, Wallace Miller, III, Donald D. Rentz, George M. Mixon,* for appellees.

HILL, Justice, dissenting.

When analyzed it will be seen that the majority says that there are no precedents for solving a severability problem where the enactment is written in the alternative; that the enactment could have been written as an exception or proviso; that if it had been so written it would be unseverable; that we can not judicially ascertain the legislative intent; and that being thus unable to judicially ascertain the legislative intent, we reverse.

The city enacted an ordinance governing railroad crossings for the safety of its citizens. It gave the railroad an option—slow down in town to 15 m.p.h., or put a flagman at each crossing. The railroad challenged the flagman provision and had it declared invalid. Now the railroad argues that if the city had known it could not require a flagman to warn motorists of trains, then the city would not have enacted, as an alternative, a 15 m.p.h. speed limit. The majority can not accept that. So the majority say they do not know what the city would have done, and being without such information, they agree with the railroad, reverse the trial judge and strike down the remaining part of the ordinance which was valid when standing alone.

I would say that when, in a severability case, we are unable to ascertain the legislative intent, then let what

the legislature enacted stand; do not strike it down simply because we lack information. I would say further that when safety legislation is enacted in the alternative, and one alternative is found to be invalid, the other safety feature should be salvaged unless the legislative intent clearly would be to the contrary. As Judge Cardozo said in People v. Knapp, 230 N. Y. 48, 63 (129 NE 202, 208) (1920), cert. den., 256 U. S. 702 (1921), "Our duty is to save, unless in saving we pervert."

Let us put this last assertion to the test. Suppose that a city were to adopt an ordinance requiring all hotels, motels, and apartments which have swimming pools over 4 feet deep to provide a lifeguard, or prohibit children under 6 years of age from using such pools unless accompanied by adults. It could be written to provide that all children under 6 using such pools must be accompanied by adults, except where a lifeguard is present. If the lifeguard requirement were declared invalid, the majority would say that perhaps the city intended to let young children swim unattended. I would reach a contrary conclusion in the hypothetical, and in this case. I therefore dissent.

I am authorized to state that Chief Justice Nichols joins in this dissent.