**AMERICAN BOOKSELLERS ASSOCIATION, INC., et al., Plaintiffs,**

v.

**James WEBB, et al., Defendants.**

**Civ. A. No. C84–697A.**

United States District Court, N.D. Georgia, Atlanta Division.

Feb. 20, 1987.

J. Kirk Quillian, William N. Withrow Jr., Troutman, Sanders, Lockerman & Ashmore, Atlanta, Ga., Michael A. Bamberger, Jeffrey A. Mitchell, Finley, Kumble, Wagner, Heine, Underberg & Casey, New York City, for plaintiffs.

Gibson Dean, II, Buford, Ga., for defendants Dodd, Crunkleton & Jenkins.

Michael Bowers, George Weaver, Atlanta, Ga., Jerry Gentry, Joseph C. Parker, Marietta, Ga., for defendants Webb, Stynchcombe, Chafin, Bowden, Rivers, Hutson, Hightower, Craft, Williams, Davis & Lowe.

George P. Dillard, Decatur, Ga., for defendants Jarvis & Burgess.

Marva Jones Brooks, Atlanta, Ga., for defendant Napper.

Thomas O. Davis, Decatur, Ga., Susan B. Forsling, Atlanta, Ga., Sam F. Little, Terry L. Miller, Dalton, Ga., Thomas O. Davis, Decatur, Ga., for defendant Matthews.

## ORDER

SHOOB, District Judge.

This order will resolve the sole remaining issue in plaintiffs' challenge to O.C.G.A. §§ 16–12–102—16–12–104 (the "Act"). By order dated September 26, 1986, the Court declared unconstitutional the Act's display provision and the library exception. 643 F.Supp. 1546. Throughout the course of this case, plaintiffs have maintained that, if any portion of the Act is unconstitutional, the entire Act must fall. Addressing this issue in its previous order, the Court stated the following:

> The Georgia legislature has ...created a general presumption of severability. O.C.G.A. § 1–1–3. In addition, although divining legislative intent is never an exact science, the Court has little trouble concluding that the legislature would desire to have the definition, distribution, and exhibition provisions of the Act severed from the unconstitutional display provision. The library exception presents a significantly closer question,

however. Arguably, severing the library exception from the remainder of the Act would contravene the legislature's intention to exempt libraries from criminal liability. It is possible, however, that once the display provision is stricken libraries would face little practical risk of prosecution. The existing record fails to address this issue adequately. Now that the scope of the Court's ruling on the constitutional issues is clear, the parties will be better able to address the issue of severability.

*Id.* at 1556.

■ The parties have filed the required briefs, and the Court has concluded that the entire statute must fall because of the library exception. Although it is true that striking the display provision greatly reduces the risk of prosecution facing libraries, it is possible that libraries could be prosecuted under the distribution provision.[1] In light of this possibility, the presumption of severability is of little help here. *See, e.g., United States v. Jackson,* 390 U.S. 570, 585 n. 27, 88 S.Ct. 1209, 1218 n. 27, 20 L.Ed.2d 138 (1968). Indeed, the presumption is rebutted by a cardinal rule of statutory construction.

As defendants concede, there is a general rule providing that where, as here, an exception to a criminal statute is invalid, the entire criminal statute must be struck. *Georgia Southern & Florida Railway Co.* *v. Odom,* 242 Ga. 169, 249 S.E.2d 545 (1978); *see also Davis v. Wallace,* 257 U.S. 478, 42 S.Ct. 164, 66 L.Ed. 325 (1922); Sutherland Stat. Const. § 44.13 (4th Ed.). The reason for this is simple: by enacting an exception, a legislature manifests an intent to exempt a protected class from criminal liability. Thus, in this case, allowing the Act to stand without the library exception would contravene the legislature's intent by expanding the ambit of criminal liability.[2]

■ Even though the Court has concluded that the library exception is not severable, it is reluctant to strike the constitutional definition, exhibition, and distribution provisions. These provisions represent a valid attempt by the legislature to protect the youth of Georgia from unsuitable materials. The Court had anticipated that the legislature would enact an amendment that would render moot the severability issue. Defendants have reported, however, that no such amendment is pending and that an appeal is planned. Under these circumstances, although plaintiffs are entitled to injunctive relief as to all provisions of the Act, the Court thinks it advisable to stay until the resolution of the appeal that portion of the injunction involving the constitutional definition, exhibition, and distribution components. Such a stay will enable defendants to continue enforcing the con-

---

1. That provision provides that "[i]t shall be unlawful for any person knowingly to sell or loan for monetary consideration *or otherwise furnish or disseminate to a minor"* certain "harmful materials." O.C.G.A. § 16–12–103(a) (emphasis added).

2. Defendants have advanced a creative but unconvincing argument based on the history of statutes similar to the Act. According to defendants, the legislature intended that the library exception apply only to the display provision. This intent, defendants argue, is revealed by comparing the 1981 version of the Act, which included neither a display provision nor a library exception, with the 1969 version, which included both a display provision and a library exception. 1981 Ga. Laws 1578, 1580; 1969 Ga. Laws 222, 223, 225. The Court rejects this argument for several reasons. First, the plain language of the library exception indicates that it applies to the Act as a whole. O.C.G.A. § 16–12–104. Second, contrary to defendants' assertion, it appears that the 1981 statute did apply to displays of sexually explicit materials, since it prohibited "showing" such material to minors. Third, as defendants concede, because "the 1981 statute was arguably limited to commercial or 'business' distributions," the legislature may well have concluded that no library exception was needed. Defendants' Supplementary Brief on Severability at 11 n. 2. Fourth, it is difficult to discern the logic behind confining the library exception's application to the terms of the display provision.

Defendants also contend that there is no evidence that libraries stock materials covered by the Act, but their contention is based on an overly narrow interpretation. As the Court concluded in its earlier order, the Act's definition of the term "harmful to minors" applies to a significant percentage of adult reading material.

stitutional provisions of the Act, and, as conceded by plaintiffs, will not result in prejudice to booksellers or adult consumers.[3]

In sum, the Clerk is DIRECTED to enter judgment enjoining the enforcement of the Act. That judgment shall be STAYED pending appeal with respect to the definition, exhibition, and distribution components of the Act.

---

3. As counsel for defendants stated at oral argument, the legislature's decision not to enact a curative amendment has created a risk that the state could find itself without a statute barring the sale of sexually explicit materials to minors. Even if the Eleventh Circuit were to reverse the Court's order with respect to the display provision, an affirmance on the library exception and severability issues would result in the entire Act being struck. There are several options the legislature could follow to prevent such a result. One option is to provide specifically that the library exception is severable.